874 P.2d 1091

Helen Heu ING, Lowell C.E. Ing, and Beverly I. Lee as Trustees for Jeffrey L. Ing, Lowell D. Ing, Leslie G. Ing, Tim S. Ing, Helen A. Lee, Terrance D. Lee, and Scott D. Lee under Trust Agreement No. 3 created April 2, 1968, Plaintiffs–Appellees,

v.

ACCEPTANCE INSURANCE COMPANY, Defendant–Appellee,

and

McGRIFF Liquors, Ltd., dba the 23rd Step, Jeannie McGriff, Tony L. McGriff, John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Roe Partnerships 1–10, Doe Entities 1–10, and Doe Governmental Units 1–10, Defendants,

and

Vitto's Inc., dba Vittos, Intervenor–Appellant.

Nos. 17268, 17193.*

Supreme Court of Hawai'i.

June 7, 1994.

* By order dated August 31, 1993, this court consolidated Nos. 17268 and 17193.

Steven H. Aden (Gerard A. Jervis and Andrew S. Winer, with him on the briefs; of Jervis & Winer), Kailua, for intervenor-appellant.

Shelton G.W. Jim On (Henry F. Beerman, with him on the brief; of Jim On & Beerman), Honolulu, for plaintiffs-appellees Ings.

Daryl M. Arakaki (Kevin P.H. Sumida, with him on the brief; of Matsui Chung Sumida & Chang), Honolulu, for plaintiffs-appellees Acceptance.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiffs–Appellees Helen Heu Ing, Lowell C.E. Ing, and Beverly I. Lee as Trustees for Jeffrey L. Ing, Lowell D. Ing, Leslie G. Ing, Tim S. Ing, Helen A. Lee, Terrance D. Lee, and Scott D. Lee (collectively Ings) and Intervenor–Appellant Vitto's, Inc. dba Vittos (Vittos) sustained property damages as a result of a fire caused by Defendant Tony McGriff (Tony). Both the Ings and Vittos filed separate actions alleging that the fire was caused by the negligent and/or tortious acts of Defendants McGriff Liquors, Ltd., dba The 23rd Step (The 23rd Step), Jeannie McGriff (Jeannie) and Tony (collectively the McGriffs). Having asserted their claim prior to Vittos's, the Ings obtained a judgment against the McGriffs nine months before Vittos was awarded its judgment.

The Ings, thereafter, filed an action for declaratory relief against The 23rd Step's insurance company, Defendant–Appellee Acceptance Insurance Company (Acceptance). Eight months later, the Ings agreed to settle the declaratory action against Acceptance for an amount equal to The 23rd Step's policy limits. Vittos then moved to intervene in the Ings' declaratory action pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 24(a) (1990). Vittos also filed a motion to determine the amount of its "lien" against the settlement under Hawai'i Revised Statutes (HRS) § 663–10 (Supp.1992). Both motions were denied by the circuit court.

Vittos timely appealed the orders denying its motions. We affirm.

## I. FACTS

This appeal stems from a fire at The 23rd Step. Jeannie was the sole officer and director of The 23rd Step. Tony was Jeannie's son and was employed by The 23rd Step.

According to the record, Tony "employed, engaged, authorized, and/or permitted" Rodney Ingalls and Paul Butler to start a fire in The 23rd Step. The fire resulted in property damage to The 23rd Step and the commercial building in which it was located. The commercial building was owned by a trust whose beneficiaries were the Ings.

Jeannie and The 23rd Step were insured by Acceptance. The insurance policy was a Special Multi–Peril Policy, which limited liability coverage for bodily and property damage to $300,000.00 in the aggregate for each occurrence.

On September 27, 1991, the Ings filed a lawsuit against The 23rd Step for property damage resulting from the fire. The Ings were awarded a judgment against The 23rd Step on July 23, 1992. Thereafter, on September 8, 1992, the Ings filed their declaratory action against Acceptance (Ing declaratory action). The Ings argued that Acceptance was contractually liable for payment of the damage to their property resulting from the fire. The Ings also placed notice of the Ing declaratory action in the Court Report section of the Pacific Business News on September 8, 1992.

Nearly seven months later, on April 22, 1993, the Ings and Acceptance reached a settlement (Ing/Acceptance settlement). On May 13, 1993 the parties submitted a stipulation to the circuit court dismissing the Ing

declaratory action, which the court accepted on May 17, 1993.

The fire, however, also resulted in property damage to Vittos, which was located in the same building as The 23rd Step. Upon learning of the Ings' action against the McGriffs, one of Vittos's attorneys, Gerard A. Jervis (Jervis), contacted Shelton Jim On, the attorney for the Ings, in October 1991. The subject of their discussion is in dispute.

Vittos contends that the respective attorneys agreed to "work together in pressing said claims to the end [and] that the parties would apportion between them any insurance proceeds recovered from Acceptance." The Ings, however, contend that no such agreement was reached.

Relying on the "agreement," Vittos filed its own lawsuit against the McGriffs on December 4, 1991, two and a half months after the Ings filed their suit. On April 22, 1993, nine months after the Ings were awarded judgment against the McGriffs, Vittos was awarded judgment against the McGriffs. April 22, 1993 is also the same day that the Ings and Acceptance agreed to settle the Ing declaratory action.

Five days later, on April 27, 1993, Jervis and another of Vittos's attorneys, Andrew S. Winer, notified Acceptance's attorney, Jeffrey H.K. Sia, of the "judgment" against Acceptance.[1] Vittos's attorneys were unaware, however, that Sia had withdrawn as Acceptance's counsel as of April 13, 1993.[2]

On May 12, 1993, Vittos filed its own action for declaratory relief against Acceptance. The following day, Vittos also filed a motion to intervene in the Ing declaratory action. Because of the settlement reached between Acceptance and the Ings, Vittos contended that its intervention was essential to preserve its rights against Acceptance.

Vittos also filed a motion to determine the validity of its lien against the Ing/Acceptance settlement on May 14, 1993. Given its judgment against the McGriffs, Vittos asked the court to determine its alleged lien rights against the Ing/Acceptance settlement. Vittos' motion was filed pursuant to HRS § 663–10.

On June 9, 1993, the circuit court denied Vittos's motion to determine the validity of Vittos's lien. Vittos filed a notice of appeal on June 17, 1993. On July 6, 1993, the circuit court also denied Vittos's motion to intervene in the Ing declaratory action. Vittos filed its notice of appeal on July 12, 1993. Thereafter, we consolidated the appeals of the denial of the two motions.

## II. *DISCUSSION*

### A.

Initially, Vittos claims to have an HRS § 663–10 lien against the Ing/Acceptance settlement. Section 663–10 provides:

**Collateral sources; protection for liens and rights of subrogation.** In any civil action in tort, the court, before any judgment or stipulation to dismiss the action is approved, shall determine the validity of any claim of a lien against the amount of the judgment or settlement by any person who files timely notice of the claim to the court or to the parties in the action. The judgment entered, or the order subsequent to settlement, shall include a statement of the amounts, if any, due and owing to any person determined by the court to be a holder of a valid lien and to be paid to the lienholder out of the amount of the corresponding special damages recovered by the judgment or settlement. In determining the payment due the lienholder, the court shall deduct from the payment a reasonable sum for the costs and fees incurred by the party who brought the civil action in tort. *As used in this section, lien means a lien arising out of a claim for payments made or indemnified from collateral sources for costs and expenses arising out*

---

1. In his affidavit, Jervis states that he notified Sia of the "Judgment against Acceptance." Vittos, however, was not awarded a judgment against Acceptance, inasmuch as the judgment was against the McGriffs.

2. Sia was forced to withdraw because he became a potential witness.

*of the injury which is the subject of the civil action in tort.*

HRS § 663–10 (Supp.1992) (emphasis added).

■ The interpretation of HRS § 663–10 is a question of law that we review *de novo. Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). Our primary duty is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself. *Id.* Moreover, where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. *AIG Haw. Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 634, 851 P.2d 321, 328 (1993) (citation omitted). Section 663–10 is plain and unambiguous. According to the language of the statute, Vittos does not have a lien against the Ing/Acceptance settlement.

■ A lien under HRS § 663–10 is "a claim for payments made or indemnified from collateral sources for costs and expenses arising out of the injury which is the subject of the civil action in tort." Because Vittos has not made payments or indemnified the Ings or Acceptance for costs and expenses arising out of the fire, Vittos is not a "collateral source payor." Thus, by statutory definition, Vittos does not have an HRS § 663–10 "lien" against the settlement.

As stated by the legislature, HRS § 663–10 was intended to provide:

a mechanism which would serve to avoid, upon the giving of timely notice, *double payment* in tort actions from collateral source lienholders who may have paid for costs or expenses arising out of the injury which is the subject of the tort action. A post-judgment or post-settlement proceedings [sic] before the court would establish first, the validity of *liens of collateral source payors* and second, that payment on those liens or so much thereof is deducted from the proceeds of the special damages awarded to the plaintiff. . . .

*The intent of this provision is to prevent double payments from collateral source* [sic] for costs or expenses arising out of the injury for which the plaintiff has

brought the tort action and is awarded a judgment therefor.

Hse.Stand.Comm.Rep. No. 2–86, in 1986 House Journal, at 37 (emphasis added).

Contrary to Vittos's contentions, the present situation does not involve a double payment from a collateral source. As argued by Vittos, "[w]hether the 'double payment' results from the retention of benefits from a third party source or from the retention of insurance proceeds to which another claimant is entitled should be of no consequence, for either result is the type of improper enrichment the statute seeks to prevent." We disagree.

The Ings are not receiving a double recovery for their injuries. The Ings are simply receiving a single partial reimbursement for the property damages they sustained as a result of the fire. Moreover, the legislative history clearly indicates an intent to prevent double payments from *collateral source payors,* which Vittos is not.

Vittos urges us to "broadly construe" the term "lien" consonant with its common law usage as defined in *Black's Law Dictionary.* Essentially, Vittos is asking us to re-write HRS § 663–10 in order to define a "lien" as a "claim, encumbrance, or charge on property for payment of some debt, obligation or duty." *Black's Law Dictionary* 922 (6th ed. 1990). We cannot accept Vittos's definition.

■ As discussed *supra,* accepting Vittos's definition of a lien completely disregards the plain and unambiguous language of the statute as well as its clear intent and purpose. Succinctly stated, HRS § 663–10 was enacted to prevent double recoveries by allowing collateral source payors to recover payments made to an injured party for costs and expenses arising out of the injury that was the subject of the civil action in tort. Accordingly, we hold that HRS § 663–10 does not apply to the instant case, and, therefore, the circuit court properly denied Vittos's motion to determine its lien.

B.

Vittos also appeals the denial of its motion to intervene. Vittos filed its motion pursuant

to HRCP Rule 24(a) (1990), which provides that:

> [u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Vittos contends that it had a Rule 24(a)(1) unconditional right to intervene in the Ing declaratory action because it had a lien pursuant to HRS § 663–10. However, as discussed *supra*, HRS § 663–10 does not apply to Vittos, and, therefore, it does not give Vittos an unconditional right to intervene.

Alternatively, Vittos contends the circuit court erred because it had an "interest relating to the property or transaction which [was] the subject of the action." HRCP Rule 24(a)(2).

■ In *Kim v. H.V. Corp.*, 5 Haw.App. 298, 688 P.2d 1158 (1984), the Intermediate Court of Appeals (ICA) set forth the standard for an application of intervention pursuant to HRCP Rule 24(a)(2). The ICA stated that:

> Rule 24(a)(2), HRCP, requires [the court] to consider four factors in assessing [the intervenor's] right to intervene: a) whether the application was timely; b) whether [the intervenor] claim[ed] an interest relating to the property or transaction which [was] the subject of the action; c) whether the disposition of the action would, as a practical matter, impair or impede [the intervenor's] ability to protect that interest; and d) whether [the intervenor's interest was] inadequately represented by the existing defendants.

*Id.* at 301, 688 P.2d at 1161.

■ Applying the foregoing standard, we first address the question of timeliness, which is a matter left to the sound discretion of the trial court. *Id.* (citations omitted). To determine whether the motion to intervene was timely, we must consider the totality of circumstances, but especially relevant is: (1) the lapse of time between when Vittos should have sought intervention and when it actually did; and (2) the prejudice caused to the Ings and Acceptance by the lapse of time. *Id.* at 301–02, 688 P.2d at 1161 (citation omitted).

Vittos contends that it sought intervention immediately after it obtained a judgment against the McGriffs and it learned of the Ing declaratory action. Thus, Vittos impliedly makes two arguments: (1) Vittos did not have an interest in the Ing declaratory action until it obtained its judgment against the McGriffs; and (2) it filed its motion to intervene as soon as it had actual knowledge of the declaratory action.

### 1.

Vittos argues that it did not acquire an interest in the Ing declaratory action until it received its judgment against the McGriffs and, therefore, seeking intervention on the basis of its contingent interest would have been premature. We disagree and hold that, pursuant to *Kim*, Vittos could have filed its motion to intervene as soon as the Ing declaratory action was filed.

■ In *Kim*, the plaintiff argued that the intervenor did not have an interest in his case because the intervenor's interest was contingent on the final decision in the intervenor's separate cause of action to determine its duty to defend and indemnify. *Kim*, 5 Haw.App. at 303, 688 P.2d at 1161. The ICA disagreed and held that the "uncertainty of the interest [was] not a bar to intervention." *Id.* (citing *S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943 (8th Cir.1983)). Likewise, the uncertainty of Vittos's action against the McGriffs was not a bar to intervention and Vittos could have filed its motion to intervene as early as September 8, 1992.

### 2.

Vittos also argues that it was not aware of the Ing declaratory action and that it filed its motion as soon as it became aware. Acceptance counters that Vittos was aware that the Ings had filed a suit against the McGriffs as of October 91. The Ings were awarded a

judgment against the McGriffs on July 23, 1992 and filed the declaratory action against Acceptance on September 8, 1992. Vittos, however, did not attempt to intervene in the Ing declaratory action until May 13, 1993, even though it was aware that the Ings were actively pursuing their claims against the McGriffs.[3]

■ In the instant case, the exact date Vittos had actual knowledge of the Ing declaratory action is not clear. However, the relevant date is when Vittos knew or *reasonably should have known* of its interest in the declaratory action. *See Farmland Dairies v. Commissioner of N.Y. Dept. of Agr.*, 847 F.2d 1038 (2nd Cir.1988) (applicants were aware of pending lawsuit six months prior to petition for intervention and should have known that their interests were not adequately represented by Attorney General); *County of Orange v. Air California*, 799 F.2d 535 (9th Cir.1986), *cert. denied sub nom. City of Irvine v. Orange County*, 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987) (appellants' motion to intervene was untimely because they should have known the pending lawsuit might settle to their detriment); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir.1978), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978) (motion to intervene untimely because appellants knew or should have known of continuing negotiations since newspapers reported events and co-workers were involved in the suit).

■ Based on the totality of circumstances, Vittos should have known about the Ing declaratory action when it was filed on September 8, 1992. Vittos knew by October 1991 of the Ings' suit against the McGriffs. A reasonable party should have known the Ings would pursue a claim against the McGriffs' insurance coverage if the Ings were successful in their cause of action against the McGriffs. This view is supported by the fact that this is the same approach taken by Vittos in its attempt to pursue its claim for damages.

Moreover, the Ing declaratory action was published in the Pacific Business News on September 8, 1992. Based upon this, there was sufficient evidence that Vittos should have known about the Ing declaratory action as of September 8, 1992, but waited until May 13, 1993 to file its motion to intervene. Accordingly, the relevant lapse of time was from September 8, 1992, the day the Ings filed their declaratory action, to May 13, 1993, the day Vittos filed its motion to intervene, approximately eight months.

### 3.

■ Having established the relevant lapse of time, we must next determine whether any prejudice to the Ings and/or Acceptance would result from Vittos's delay. We hold that there would be substantial prejudice to the parties by allowing Vittos to intervene eight months after the date it should have known about the Ing declaratory action.

During the eight month lapse of time, the Ings and Acceptance agreed to settle. Due to the settlement, the Ings and Acceptance submitted a stipulation to dismiss the declaratory action, which the court filed on May 17, 1993. If Vittos is allowed to intervene, it would be highly prejudicial to the Ings, who would lose their settlement. The Ings and Acceptance would then be forced to litigate their claims in court. Thus, because Vittos should have sought intervention in September 1992, and did not do so for eight months to the prejudice of the Ings and Acceptance, its motion to intervene was untimely.

Because we hold that Vittos' motion to intervene was untimely, we need not reach the remaining factors of the *Kim* test. Accordingly, we hold that the circuit court did not err when it denied Vittos's motion to intervene in the Ing declaratory action.

### C.

Finally, Vittos contends that the circuit court erred when it approved the stipulation to dismiss the Ing declaratory action. How-

---

**3.** There is nothing in the record to indicate that the circuit court made a finding of untimeliness. Thus, because the motion to intervene could have

been denied because of any one of the factors in *Kim*, it is not clear whether the circuit court found the motion to be timely.

ever, given the fact that we have held that the circuit court properly denied Vittos's motions, the court, likewise, properly accepted the stipulation to dismiss the declaratory action.

### III. *CONCLUSION*

Based on the foregoing we hold that: (1) Vittos's motion to determine its lien on the Ing/Acceptance settlement was properly denied, because HRS § 663–10 unambiguously applies to collateral source payors, which Vittos was not; and (2) Vittos's motion to intervene was also properly denied because it was untimely. Accordingly, we affirm.