903 P.2d 48

**Lloyd SHIMABUKU and Lauren M. Shimabuku, Plaintiffs–Appellees,**

**v.**

**MONTGOMERY ELEVATOR COMPANY, Defendant–Appellee, and John Does I–V; Doe Partnerships I–V: and Doe Corporations I–V: and Doe Governmental Entities I–V, Defendants. State of Hawai'i, Intervenor–Appellant.**

**No. 16594.**

Supreme Court of Hawai'i.

Sept. 12, 1995.

Sandra A. Yee, Deputy Atty. Gen., on the briefs, Honolulu, for intervenor-appellant.

Steven H. Aden (Gerard A. Jervis, Andrew S. Winer of Jervis & Winer, Kailua, and George K. Lindsey, Jr., Honolulu, with him on the brief), for plaintiffs-appellees.

Sydney K. Ayabe (Robin R. Horner of Libkuman, Ventura, Ayabe, Chong & Nishimoto, with him on the brief), Honolulu, for defendant-appellee.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiffs-appellees Lloyd Shimabuku (Shimabuku) and Lauren Shimabuku brought a tort action against defendant-appellee Montgomery Elevator Company (Montgomery) for injuries suffered during the scope and course of Shimabuku's employment with intervenor-appellant State of Hawai'i (Employer). Shimabuku received workers' compensation benefits from Employer. On the day after jury selection began and without Employer's knowledge or consent, Shimabuku and Montgomery (collectively Appellees) stipulated to dismiss all claims against Montgomery. At the same time, Shimabuku's spouse, Lauren Shimabuku settled her claims for $64,500.

Thereafter, Employer moved to intervene and to set aside the stipulation dismissing Shimabuku's claims. The circuit court denied Employer's motions, and Employer appealed. On appeal, Employer argues that: (1) the stipulation dismissing Shimabuku's claims was invalid under Hawai'i Revised Statutes (HRS) § 386–8 (1985); (2) the circuit court erred in denying intervention under HRS § 386–8; and (3) it had a valid lien over Lauren Shimabuku's settlement proceeds under HRS § 663–10 (1985).

## I. FACTUAL BACKGROUND

On March 30, 1989, Shimabuku sustained injuries as a result of an elevator malfunction at the State Capitol during the scope and course of his employment. Thereafter, pursuant to a workers' compensation claim filed by Shimabuku, Employer paid Shimabuku's benefits.[1]

On October 26, 1990, Shimabuku and his wife, Lauren, filed a complaint against Montgomery. Shimabuku stated claims sounding in negligence, products liability, and breach of warranty. Lauren Shimabuku stated a claim for loss of consortium. That same day, Shimabuku gave Employer a file marked copy of the complaint and requested Employer's assistance in preparing for trial. An agreement was reached regarding Employer's share of Shimabuku's attorney fees for pursuing the third-party action against Montgomery. Thereafter, Employer's counsel monitored the progress of the suit, but refrained from joining the action as a party.

According to Employer's counsel, the circuit court inquired about the status of Employer's lien shortly before jury selection began on September 16, 1992. Jury selection commenced thereafter with Employer's counsel present in the courtroom.

On September 17, 1992, Appellees filed a stipulation dismissing Shimabuku's claims with prejudice as to all parties without Em-

ployer's knowledge or consent. As part of the stipulation, Shimabuku's wife settled her loss of consortium claim for $64,500. During a chambers conference on September 17, 1995, Appellees placed the stipulation on the record. The circuit court granted Appellees' request for a confidentiality seal on the settlement terms and prohibited the court reporter from producing transcripts of the chamber's conference. Employer was not present during the chamber's conference, and Employer's subsequent attempt to obtain information about the settlement proved fruitless.

On September 29, 1992, twelve days after the stipulation was filed, Employer moved to intervene in the action as a party plaintiff and to establish a lien on Lauren Shimabuku's settlement proceeds. On the following day, Employer moved to set aside the stipulation and settlement. The circuit court heard both motions on October 6, 1992. The circuit court denied the motion to intervene, concluding that it was untimely. The circuit court then dismissed the motion to set aside the stipulation and settlement, concluding that Employer lacked standing to bring the motion.

The order denying Employer's motion to intervene was filed on October 30, 1992. On November 5, 1992, Employer filed a notice of appeal from the following: (a) the stipulation for dismissal with prejudice; (b) the decision dismissing the motion to set aside the stipulation and settlement announced on September 30; and (c) the order denying the motion to intervene filed on October 30. On November 16, 1992, the order dismissing Employer's motion to set aside the stipulation and settlement was filed.

## II. JURISDICTION

■ Montgomery contends that there is no appellate jurisdiction with regard to the order denying Employer's motion to intervene because it was not the final order in the

---

1. Employer paid a total amount of $98,757.21 in workers' compensation benefits, which included $57,731.87 in medical expenses, $39,440.04 in temporary total disability, and $1,426.33 in temporary partial disability.

case.[2] We disagree. In determining whether an order is final for purposes of HRS § 641–1 (1985),[3] this court has repeatedly stated that "a final judgment or decree is not necessarily the last decision of a case." *In re Hawaii Gov't Employees Assoc.*, 63 Haw. 85, 88, 621 P.2d 361, 364 (1980) (citations omitted). Orders denying a motion to intervene should be regarded as an appealable final order because "it surely is so far as the would be intervenor is concerned." *Id.* (quoting 7C Wright, et. al., *Federal Practice & Procedure* § 1923 (1986)). In addition, the Intermediate Court of Appeals (ICA) has held that "an order denying an application for intervention by right under [Hawai'i Rules of Civil Procedure (HRCP), Rule 24(a)(2) ] . . . is final and appealable." *Kim v. H.V. Corp.*, 5 Haw.App. 298, 301, 688 P.2d 1158, 1160 (1984) (citation and footnote omitted). Therefore, we hold that the order denying Employer's motion to intervene constituted a final appealable order.[4]

 Appellees also contend that Employer's notice of appeal was premature because it was filed before the order dismissing the motion to set aside the stipulation was filed. We disagree. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(2) allows a party to file a notice of appeal after the announcement of a decision or order.[5] *See Makaneole v. Pacific Ins. Co., Ltd.*, 77 Hawai'i 417, 420, 886 P.2d 754, 757 (1994) (noting that HRAP 4(a)(2) effectively dispenses with the jurisdictional defects arising from Makaneole's premature filing of his notice of

appeal); *see . also Bank of Honolulu v. Davids*, 6 Haw.App. 25, 26 n. 2, 709 P.2d 613, 616 n. 2 (1985). Therefore, because Employer filed its notice of appeal after the circuit court's decision was announced, we hold that Employer's notice of appeal is timely. Consequently, we have jurisdiction to review the order denying Employer's motions to intervene and to set aside the dismissal and settlement.

## III. *DISCUSSION*

### A. *Employer's Written Consent*

Employer first contends that the Hawai'i Revised Statutes (HRS) § 386–8 (1985) required Shimabuku to obtain consent from the Employer before dismissing his tort suit against Montgomery because Shimabuku previously received workers' compensation benefits. We agree.

#### 1. *Applicable rules of statutory construction*

 Absent any constitutional obstacles, this court recognizes that its primary duty is to ascertain and give full effect to the intent of the legislature. *Sol v. AIG Hawai'i Ins. Co.*, 76 Hawai'i 304, 307, 875 P.2d 921, 924 (citation omitted), *reconsideration denied*, 76 Hawai'i 353, 877 P.2d 890 (1994); *Sato v. Tawata*, 79 Hawai'i 14, 15–16, 897 P.2d 941, 942–43 (1995) (Ramil, J., dissenting). Although we may consider sources other than

2. In support of its argument that the order denying intervention is not a final judgment, Montgomery relies on *King v. Ilikai Properties, Inc.*, 2 Haw.App. 359, 632 P.2d 657 (1981). However, we hold *King* inapplicable. In *King*, the Intermediate Court of Appeals (ICA) held that the entry of the last of the series of orders gives finality and appealability to all the orders where the disposition of a case is embodied in several orders. *Id.* at 362, 632 P.2d at 660. In the instant case, however, the order denying the Employer's motion to intervene prevented Employer from asserting its rights thereafter.

3. HRS § 641–1 provides in relevant part that "[a]ppeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the

supreme court or to the intermediate appellate court." .

4. Because Employer filed a notice of appeal within thirty days of the order denying its motion to intervene, we find this appeal timely under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a), which provides in relevant part that "the notice of appeal . . . shall be filed . . . within 30 days after the date of entry of the judgment or order appealed from."

5. HRAP 4(a)(2) provides in relevant part that "[e]xcept as provided in (a)(4) of this rule, notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

the language of the statute itself, we obtain the intent of the legislature primarily from the language of the statute. *Kam v. Noh,* 70 Haw. 321, 325, 770 P.2d 414, 416 (1989). This court presumes legislative enactments to be valid and, where possible, interprets every word, clause, and sentence of a statute to give them effect. *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 54, 868 P.2d 1193, 1201 (citation omitted), *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994). As a general rule, unambiguous language will not be rejected if a construction can be found that will preserve and give force to all the words of a statute. *Id.* at 60, 868 P.2d at 1207; *Sato,* 79 Hawai'i at 16, 897 P.2d at 943.

■ Given the general rules governing statutory construction, we now review the language of HRS § 386–8. The interpretation of a statute is a question of law reviewable *de novo. Sato,* at 17, 897 P.2d at 944 (citing *Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)).

### 2. *The language of HRS § 386–8*

The language of HRS § 386–8 is plain and unambiguous and provides in relevant part:

**Liability of third person.** When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer ... a legal liability to pay damages on account thereof, the injured employee or his dependents ... may claim compensation under this chapter and recover damages from such third person.

. . . .

*No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee.*

(Emphasis added.)

■ Thus, under the clear language of HRS § 386–8, an injured employee, who has previously received workers' compensation

benefits, may not dismiss a claim against a third-party tortfeasor without written consent of the employer. Although the language of HRS § 386–8 is clear and unambiguous, a search of its legislative history further reveals that the legislature intended its clear language to be given full effect.

### 3. *Legislative history*

HRS § 386–8 originated in 1915 as section 5 of Act 221 of the Laws of the Territory of Hawai'i. However, the dispositive paragraph of HRS § 386–8 in the instant case, which requires consent of both employer and employee before any "release" or "settlement" is valid, was not added until 1951 when the House Labor Committee amended Senate Bill 418 (S.B. 418) to include the paragraph. 1951 Haw.Sess.L. Act 194, § 4409 at 229. The paragraph proposed by the House Labor Committee provided in relevant part:

No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee. The entire amount of such settlement is subject to the employer's full claim for reimbursement for his expenditures for benefits under this chapter and his expenses and costs of action.

*Id.*[6]

■ In amending S.B. 418, the House Labor Committee noted:

H. D. 1 amends S. D. 1 in accordance with suggestions of the Department of Labor and the Insurance Industry so that the wording ... provides a more equitable balance as between the rights of the employer and the employee.

Hse.Stand.Comm.Rep. No. 722, in 1951 House Journal, at 579. Thus, the legislature enacted HRS § 386–8 to give the injured employee a right to claim workers' compensation benefits and to proceed against a

---

**6.** We note that this paragraph remains nearly identical to the fourth paragraph of HRS § 386– 8 (1985), which is dispositive of the issue in the instant case.

third-party tortfeasor without waiving his or her rights to either. Hse.Stand.Comm.Rep. No. 722, in 1951 House Journal, at 579. However, because the employer's right to reimbursement is often dependent on the injured employee's actions, the legislature imposed a provision requiring the written consent of both employer and employee before any release or settlement is valid. Therefore, we must construe the fourth paragraph of HRS § 386–8 to give full effect to the intent of the legislature, which sought to protect the rights of both employees and employers.

### 4. *Appellees' stipulation for dismissal*

In the instant case, Shimabuku stipulated to dismiss his claims against Montgomery without the written consent of Employer despite clear statutory language requiring the written consent of both Employer and Shimabuku. Accordingly, because HRS § 386–8 provides that "[n]o release or settlement of any claim or action under this section is valid without the written consent of both employer and employee[,]" we hold that Appellees' stipulation dismissing all claims with prejudice is invalid.

■ Appellees contend that the stipulation to dismiss was neither a "release" nor a "settlement" under HRS § 386–8. We disagree. A release is an "[a]bandonment of claim to party against whom it exists and is a surrender of a cause of action and may be gratuitous or for consideration" and occurs when a party gives up or abandons a claim or right. Black's Law Dictionary 1289 (6th ed.1990) (citing *Melo v. National Fuse & Powder Co.*, 267 F.Supp. 611, 612 (D.Colo. 1967)). In the instant case, regardless of the

reasons motivating Shimabuku, he abandoned his claims against Montgomery.[7] Therefore, we hold that Appellees' stipulation to dismiss all claims as to all parties constituted a "release" under HRS § 386–8.

■ Appellees next contend that Employer should not be permitted to disturb the agreement reached by the parties because of the general policy favoring the finality of judgments and settlements. For the following reasons, we disagree and conclude, under these circumstances, that Employer's subrogation rights under HRS § 386–8 outweigh Appellees' interest in the finality of their settlement.

■ First, we agree with Employer's argument that the Appellees' stipulation contravenes Employer's subrogation interest. HRS § 386–8 provides in relevant part that "the employer, having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee." This court has defined subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Peters v. Weatherwax,* 69 Haw. 21, 27, 731 P.2d 157, 161 (1987) (internal quotation marks omitted) (quoting *Kapena v. Kaleleonalani,* 6 Haw. 579, 583 (1885)). When subrogation occurs, "the substitute is put in all respects in the place of the party to whose rights he is subrogated." *Peters,* 69 Haw. at 27, 731 P.2d at 161 (citations omitted).

In support of its contention, Employer relies on *Mata v. Clarion Farmers Elevator Cooperative,* 380 N.W.2d 425 (Iowa 1986). In *Mata,* the Iowa Supreme Court held that,

---

7. Appellees maintain that Shimabuku abandoned his claims against Montgomery because he was left without a liability expert for trial when the circuit court denied Shimabuku's motion to add an expert witness. In light of the questionable viability of his claim against Montgomery in the absence of an expert witness in the field of elevators, Shimabuku dismissed his claims rather than proceed with a costly and time-consuming trial. However, as explained above, we hold the stipulation dismissing Shimabuku's claim invalid regardless of Shimabuku's motivation for dismissing his claims. In any event, if the matter proceeds to trial on remand, the circuit court is not bound by and may reconsider its order denying Shimabuku's motion.

under Iowa's workers' compensation statute,[8] a dismissal of an employee's third-party action was not valid without the written consent of the employer or insurer. *Id.* at 429. The employee in *Mata* dismissed his claims with prejudice following the defendant third-party tortfeasor's settlement with his wife and children without the consent of the employer. *Id.* at 426–27. In recognizing that the employee's dismissal was tantamount to a settlement under Iowa's workers' compensation statute, the court opined:

> The possible consequences of a contrary conclusion are apparent.... [I]f the employee dismisses with prejudice, as here, the employer/insurer must attempt to overcome a claim-preclusion defense to a subrogation action. In any case the employer/insurer's right of indemnity could be subverted by the third party's simply paying the family members for loss of consortium and having the employee himself dismiss his third party claim....

*Id.* at 428–29 (internal quotation marks omitted); *see also Taylor v. Trans–Lease Group,* 34 Mass.App.Ct. 404, 612 N.E.2d 254 (1993) (noting that an insurer's right to reimbursement for workers' compensation benefits paid to an employee may not be abridged without insurer's acquiescence).

■ We apply the reasoning of *Mata* to the instant case and hold that Appellees may not contravene Employer's subrogation rights under HRS § 386–8 by dismissing all claims against Montgomery without Employer's consent. The stipulation affected Employer's right to reimbursement for the workers' compensation benefits paid to Shimabuku. Thus, under HRS § 386–8, Employer was entitled either to approve or disapprove the stipulation dismissing Shimabuku's claims.

■ Second, we agree with Employer's contention that Appellees knew or should have known about Employer's subrogation interest. Employer's counsel participated in Shimabuku's preparation for trial, and Appellees knew or reasonably should have known that Shimabuku's claims arose out of a work related injury in which workers' compensation benefits were paid. Consequently, we conclude that the Employer's subrogation interest outweighs Appellees' finality interest in the stipulation dismissing Shimabuku's claims.

Because we see no reason to depart from the clear and unambiguous language of HRS § 386–8, we hold that the stipulation dismissing Shimabuku's claims against Montgomery was invalid from the beginning.[9]

## B. *Employer's Motion To Intervene*

■ Employer also appeals the order denying its motion to intervene.[10] The cir-

---

**8.** Iowa Code Ann. § 85.22 (West 1983) provides in relevant part:

> 1. When an employee receives an injury ... for which compensation is payable under this chapter ... and which injury ... is caused under circumstances creating legal liability against some [other] person ... to pay damages, the employee ... may take proceedings against the employer for compensation, and the employee ... may also maintain an action against such third party for damages.
> ....
> 3. Before a settlement shall become effective between an employee ... and such third party who is liable for the injury, it must be with the written consent of the ... employer or insurer, in case the settlement is between the employee and such third party....

Unlike HRS § 386–8, the language of Iowa workers' compensation statute requires the employer's consent for a "settlement" to be valid. In contrast, HRS § 386–8 requires the employer's consent for *either* a "release" *or* a "settlement." Thus, we note that the language of HRS § 386–8, which includes the word "release," further compels our holding that the stipulation dismissing Shimabuku's claims was invalid without Employer's consent.

**9.** Because we hold that the stipulation was invalid from the beginning, we do not address the issue whether the circuit court properly dismissed Employer's motion to set aside the stipulation and settlement.

**10.** Employer filed its motion under HRCP 24(a) (1990), which provides in relevant part:

cuit court denied the motion on the basis that it was not timely. Generally, the question of timeliness is a matter within the sound discretion of the trial court. *Ing v. Acceptance Ins. Co.*, 76 Hawai'i 266, 271, 874 P.2d 1091, 1096 (1994). However, HRS § 386–8 (1985) provides in relevant part:

> If the employee commences an action against such third person he shall without delay give the employer written notice of the action and the name and location of the court in which the action is brought.... *The employer may, at any time before trial on the facts, join as party plaintiff.*

(Emphasis added.)

In *Mata*, discussed *supra*, the Iowa Supreme Court allowed the employer to intervene in an action brought by an injured employee against a third-party tortfeasor after the employee had dismissed his claims with prejudice. *Mata*, 380 N.W.2d at 429. Because the employee's dismissal was invalid, i.e., without the consent of the employer, the court reasoned that a pending action existed into which the employer could intervene. *Id.* The court further opined that the employer's right to reimbursement under the Iowa workers' compensation statute would be circumvented if the employer were not allowed to intervene in the action. *Id.* at 428.

In the instant case, Employer contends that it relied, in part, on the statutory provision in HRS § 386–8 requiring the written consent of both the employer and employee before any "release" or "settlement" could be valid. Because the jury had not yet been selected, Employer also relied on the statutory provision in HRS § 386–8 that allows employers to intervene at any time before trial on the facts. Employer attempted to intervene before any evidence or arguments were presented to the jury and had no reason to believe that Shimabuku would dismiss his claims the day after jury selection began.

In response, Appellees argue that Employer waived its rights to intervene because HRS § 386–8 required Employer to intervene before the beginning of jury selection. However, we reject Appellees' interpretation of HRS § 386–8 and note that HRS § 386–8 does not require employers to intervene, but gives employers the option to intervene before trial on the facts.

Under these circumstances, Employer's reliance on the provisions of HRS § 386–8 was reasonable, and, accordingly, we hold that Employer had no duty to intervene until it knew or reasonably should have known that Shimabuku would dismiss his claims against Montgomery without consent. Accordingly, we hold that the circuit court abused its discretion when it denied the motion to intervene.

### C. *Lauren Shimabuku's Settlement*

■ Finally, Employer contends that the circuit court should be directed to determine the amount, if any, of Lauren Shimabuku's settlement proceeds to be applied toward Employer's lien. Generally, under workers' compensation statutes, an employer is not entitled to be reimbursed from settlement proceeds that compensate an employee's spouse for loss of consortium. *See, e.g., Page v. Hibbard*, 119 Ill.2d 41, 48, 115 Ill.Dec. 544, 547, 518 N.E.2d 69, 72 (1987) (reasoning that the employer paid no compensation to employee's wife and was not required to compensate employee's wife under the workers' compensation statute); *accord Eisner v. Hertz Corp.*, 381 Mass. 127, 133–34, 407 N.E.2d 1286, 1290 (1980); *Rascop v. Nationwide Carriers*, 281 N.W.2d 170, 173 (Minn. 1979).

■ However, a majority of courts interpreting provisions similar to HRS § 386–8 have held that an employer may attach a lien to a portion of the settlement proceeds be-

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

longing to an employee's spouse if the employee dismissed his/her claims in consideration for the settlement. *See, e.g., Page,* 119 Ill.2d at 50, 115 Ill.Dec. at 548, 518 N.E.2d at 73 (remanding the action to the trial court to determine if the value of the loss-of-consortium award, which was equal to the value of employee's personal injuries, was proper in light of the total settlement); *Mata,* 380 N.W.2d at 429; *Dearing v. Perry,* 499 N.E.2d 268, 272 (Ind.App.1986). A claim for loss of consortium will be given legal effect only when fully and fairly determined by an impartial trier of fact or where the employer or workers' compensation insurer is invited to participate in the settlement negotiations. *Blagg v. Illinois F.W.D. Truck & Equip. Co.,* 143 Ill.2d 188, 193, 157 Ill.Dec. 456, 459, 572 N.E.2d 920, 923 (1991) (citing *Dearing,* 499 N.E.2d at 272). Trial courts should closely scrutinize settlements that appear to circumvent an employer's or an insurer's right to reimbursement under workers' compensation statutes. *Blagg,* 143 Ill.2d at 193, 157 Ill. Dec. at 459, 572 N.E.2d at 923 (citations omitted).

In *Mata,* discussed *supra,* the court remanded the case for a determination as to whether the employee's dismissal of his third-party action was induced by the third parties' settlement with his wife and children. *Mata,* 380 N.W.2d at 429. Instructing the trial court, the court directed that the employer would be entitled to the portion of the settlement that was properly allocable to the employee. *Id.*

█ In the instant case, under HRS § 386–8, we hold that a husband and wife and a third-party tortfeasor may not negotiate a valid settlement in which neither the employer nor the employer's workers' compensation insurer is a party to the negotiations and where a substantial portion of the total amount is allocated to loss of consortium. Therefore, we hold that Employer is entitled to reimbursement from Lauren Shimabuku's settlement if the dismissal by Shimabuku was in fact part of the consideration or inducement for Lauren Shimabuku's settlement. *See Dearing,* 499 N.E.2d at 272 (holding that a $16,000 allocation for loss of consortium, in light of the $50,000 total award to the employee and his wife, was improper where insurer had no opportunity to negotiate the allocation). In the event that Employer is able to establish that the loss of consortium settlement induced Shimabuku to dismiss his claims, a fact-finding would be necessary as to what portion of Lauren Shimabuku's settlement of $64,500 is properly allocable to Shimabuku himself. Employer would be entitled to be reimbursed from that portion of Lauren Shimabuku's settlement.[11]

## IV. *CONCLUSION*

For the foregoing reasons, we hold that: (1) under HRS § 386–8, the stipulation dismissing Shimabuku's claims against Montgomery was invalid from the beginning; and (2) the circuit court erred in denying Employer's motion to intervene.[12] Accordingly, we vacate the circuit court's order denying Employer's motion to intervene and remand for proceedings consistent with this opinion.

---

11. We note that if the circuit court finds that Employer is entitled to part of Lauren Shimabuku's settlement proceeds, a proportionate part of Shimabuku's attorney fees must be deducted therefrom as required by HRS § 386–8.

12. In addition, Employer argues that the circuit court erred because it failed to determine the validity of Employer's lien under HRS § 663–10 (1985) before approving the stipulation dismissing Shimabuku's claims. However, because we remand this case for a determination as to whether Employer may attach a lien to Lauren Shimabuku's settlement for loss of consortium, we need not reach this issue.