978 P.2d 855

**WAYLAND LUM CONSTRUCTION, INC., Claimant–Appellant,**

v.

**Melvin Y. KANESHIGE and Nancy E. Pace, Respondents–Appellees.**

No. 20684.

Supreme Court of Hawai'i.

June 9, 1999.

William J. Wynhoff, Of Counsel: Gerson Gerkin & Wynhoff, on the briefs, Honolulu, for claimant-appellant.

Andrew V. Beaman, Of Counsel: Chun, Kerr, Dodd, Beaman & Wong, on the briefs, Honolulu, for respondents-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Claimant-appellant Wayland Lum Construction, Inc. ("Claimant") appeals from the circuit court's order denying his motion to confirm an arbitration award. On appeal, Claimant contends that: (1) the arbitrator exceeded the scope of his authority by amending his original award; and (2) the circuit court erred in concluding that the original award was not final and in confirming the amended award. For the reasons discussed below, we affirm the circuit court's order.

## I. BACKGROUND

In May 1995, respondents-appellees Melvin Kaneshige and Nancy Pace (collectively, "Respondents") hired Claimant to remodel their house. The construction contract signed by the parties contained a standard arbitration clause under which the parties agreed to submit to arbitration any dispute arising under the contract.

Sometime during the course of the project, disputes arose regarding the work rendered by Claimant. As a result, Respondents asked Claimant to stop work on the project and hired a new contractor to finish the job. After being discharged, Claimant asserted that it was entitled to more money under the contract.

Pursuant to the construction contract, the parties retained Louis L.C. Chang, Esq. (Arbitrator) as arbitrator and signed an "Arbitration Agreement" in June, 1996 granting the Arbitrator complete authority to decide the case. Under the Arbitration Agreement, the parties agreed, *inter alia*, to "arbitrate any and all claims relating to ... [d]isputes and claims of the parties regarding amounts owed under [the contract]." The arbitration clause further specified that the following services would be provided by the arbitrator:

 a. Meetings and /or joint telephone conferences with the parties;

 b. Conduct and administer pre-arbitration and arbitration hearings;

 c. Review and research of any writings, documents or other materials related to this dispute;

 d. Drafting of any and all letters, memoranda, arbitration order(s), arbitration order(s), arbitration award and/or documents of any type.

On November 25, 1996, after the conclusion of the arbitration hearing, the parties attended a meeting held by the Arbitrator. At that meeting, the Arbitrator stated that he would be circulating a draft decision for review and comment by the parties. The parties agreed to that procedure.

On January 3, 1997, the Arbitrator circulated a document entitled "Arbitrator's Decision and Award" (the Draft Award). In the Draft Award, the Arbitrator awarded Claimant $23,588.39. The Draft Award also stated that "[t]his Arbitration Decision and Award constitutes the final determination and resolution of all issues and claims raised and addressed in this arbitration." However, the last sentence of the Draft Award stated:

The Arbitrator retains jurisdiction to address, clarify, and resolve any issues or questions raised by the parties within fourteen (14) days hereof concerning modification, implementation, and or interpretation of this Arbitration Award and Decision.

After reviewing the Draft Award, Claimant disagreed with the amount of the Arbitrator's award and, as a result, did not to move to confirm the award under HRS § 658-8. A few days later, Claimant made an *ex parte* call to the Arbitrator to ask for an increase of the amount of the Draft Award. After receiving the call, the Arbitrator joined Respondents to the call by telephone conference. During the telephone conference, all parties agreed that they would submit written requests for modification of the award to the Arbitrator within fourteen days.

Within the fourteen-day period, the parties presented written submissions to the Arbitrator. After reviewing the parties' submissions, the Arbitrator concluded that he had made several mistakes. On February 25, 1997, the Arbitrator issued a final award (the Final Award) in which he lowered the amount awarded to Claimant to $3,223.61 from the amount of $23,588.39, as set forth in the Draft Award. The Final Award concluded as follows:

The Arbitrator's Decision and Award dated January 3, 1997, as revised by this Supplemental and Final Decision and Award together shall constitute the Arbitrator's Final Decision and Award being the final determination and resolution of all claims and issues raised and addressed in this arbitration.

Unlike the Draft Award, the Final Award did not contain language reserving jurisdiction to the arbitrator.

Having been awarded a lower amount by the Arbitrator's Final Award, Claimant filed a motion in the circuit court to confirm the Draft Award of January 3, 1997, arguing that the Arbitrator lacked authority to modify the Draft Award. In response, Respondents filed a cross-motion to confirm the Final Award of February 25, 1997.

On May 1, 1997, the circuit court entered an order denying Claimant's motion to confirm the Draft Award and granting Respondents' motion to confirm the Final Award.

From this order, Claimant filed a timely notice of appeal to this court.

## II. STANDARDS OF REVIEW

### A. Statutory Construction

■ The issue whether the circuit court erred in confirming the Final Award of the Arbitrator requires an interpretation of HRS §§ 658–8,[1] 658–9 [2] and 658–10 [3] (1993). The interpretation of a statute is a question of law reviewable *de novo*. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995) (citation omitted).

### B. Arbitration

■ Our review of arbitration awards is guided by the following principles. It is well settled that "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration is confined to 'the strictest possible limits[.]'" *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 69, 919 P.2d 969, 981 (1996) (quoting *Arbitration Bd. of Directors of Ass'n of Apartment Owners of Tropicana Manor*, 73 Haw. 201, 205, 830 P.2d 503, 507 (1992) (hereafter *"Jeffers"*) (brackets in original) (citations omitted)); *see also Excelsior Lodge Number One, Indep. Order of Odd Fellows v. Eyecor, Ltd.*, 74 Haw. 210, 224–27, 847 P.2d 652, 659–60 (1992). As such, a court has "no business weighing the merits of the [arbitration] award." *Mathewson*, 82 Hawai'i at 69, 919 P.2d at 981 (quoting *Jeffers*, 73 Haw. at 205–06, 830 P.2d at 507) (citation omitted). Indeed, the legislature has mandated that a court may vacate an arbitration award "only on the four grounds specified in HRS § 658–9, and ... [may] modify or correct an award only on the three grounds specified in HRS § 658–10." *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers*, 73 Haw. at 206, 830 P.2d at 507) (citation and footnotes omitted). Therefore, "HRS § 658–8 contemplates a judicial confirmation of the award issued by the arbitrator, 'unless the award is vacated, modified, or corrected' in accord with HRS §§ 658–9 and 658–10." *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers*, 73 Haw. at 207, 830 P.2d at 507) (citation omitted).

■ Based upon the policy limiting judicial review of arbitration awards, this court

1. HRS § 658–8 provides in relevant part:
 **Award; confirming award.** The award shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney. A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10.

2. HRS § 658–9 provides:
 **Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
 (1) Where the award was procured by corruption, fraud, or undue means;
 (2) Where there was evident partiality or corruption in the arbitrators, or any of them;
 (3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing

to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.
Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

3. HRS § 658–10 provides:
 **Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
 (1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
 (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
 (3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

has held that "parties who arbitrate a dispute assume 'all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.'" *Id.* at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 214–15, 830 P.2d at 511) (citations omitted). Where arbitration is made in good faith, parties are not permitted to prove that an arbitrators erred as to the law or the facts of the case. See *id.* at 70, 919 P.2d at 981 (citing *Jeffers,* 73 Haw. at 214–15, 830 P.2d at 511).

## III. *DISCUSSION*

### A. *Scope of Arbitrator's Authority*

Claimant contends that the circuit court erred by failing to confirm the Draft Award because the Arbitrator lacked the authority to retain jurisdiction to amend the Draft Award. We disagree.

 Inasmuch as judicial review of arbitration decisions is strictly limited, "arbitration must be agreed upon by the parties and evinced by a written agreement." *Moss v. American Int'l Adjustment Co., Inc.,* 86 Hawai'i 59, 63, 947 P.2d 371, 375 (1997) (citations omitted). An arbitration agreement, like any contract, must be construed to give effect to the intention of the parties. *See id.* at 62–63, 947 P.2d at 374–75 (noting that the parties failed to enter into a binding arbitration contract because there was no meeting of the minds) (citing HRS § 658–1). The scope of an arbitrator's authority is determined by the agreement. *Clawson v. Habilitat, Inc.,* 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989); *Mathewson,* 82 Hawai'i at 75, 919 P.2d at 987 (citation omitted). "As with other contractual agreements, the parties may modify the agreement defining the scope of the arbitrator's powers and authority." *Clawson,* 71 Haw. at 78, 783 P.2d at 1231 (citations omitted). In addition, an arbitration agreement should be construed as a whole, and its meaning determined from the entire context. *Leeward Bus Co., Ltd. v. City and County of Honolulu,* 58 Haw. 64,

68, 564 P.2d 445, 448 (1977); *see also Brown v. KFC Nat'l Management Co.,* 82 Hawai'i 226, 244, 921 P.2d 146, 164 (1996) (noting that "[w]hat issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the wording of the contractual agreement to arbitrate") (citation omitted).

 In this case, the parties expressly granted the Arbitrator the general power to "conduct and administer pre-arbitration and arbitration hearings." The parties also granted the Arbitrator the power to draft "arbitration order(s), arbitration award and/or documents of any type." The parties did not limit the Arbitrator's general power to conduct hearings and draft orders to any particular rules or procedures.[4] Read as a whole, it is reasonable to conclude that the parties intended under the contract to give the Arbitrator the authority to establish a procedure he considered appropriate to carry out his responsibility to arbitrate the dispute.

Given the parties' intent to allow the Arbitrator to adopt an appropriate procedure for the arbitration proceedings, we see no reason why the Arbitrator could not have issued a draft or preliminary award followed by a final award.

After the arbitration hearing on November 25, 1996, the Arbitrator stated that he would be circulating a draft decision for review and comment by the parties. Although the Arbitrator specifically retained jurisdiction in the Draft Award, "to address, clarify and resolve any issues or questions raised by the parties within fourteen (14) days[,]" Claimant failed to object to the Arbitrator's retention of jurisdiction. In fact, having concluded that the Arbitrator's Draft Award contained errors, Claimant availed itself of the suggested procedure by requesting an increase in the amount awarded. It was only after the Arbitrator issued the Final Award decreasing the amount awarded in the Draft Award that Claimant moved to confirm the Draft Award, arguing that the Arbitrator went beyond the scope of his authority by modifying the Draft Award. Given the actions of the parties with regard to the Arbitrator's Draft Award, in

---

4. Respondent cites to the Rules of the American Arbitration Association as an example of a particular set of rules that could have been adopted had the parties intended to limit the Arbitrator's authority by a particular set of rules.

particular the disingenuous argument of Claimant, we agree with Respondents that the Arbitrator was well within his authority when he issued a draft or preliminary award followed by a subsequent "final" award.

### B. *The Doctrine of Functus Officio*

Claimant argues that the doctrine of *functus officio* terminated the Arbitrator's authority in the arbitration proceedings once he issued his Draft Award. However, Claimant misconstrues the doctrine inasmuch as the Arbitrator was not *functus officio* until the Final Award was issued.

██ *Black's Law Dictionary* 673 (6th ed.1990), defines the term *functus officio* as follows:

> A task performed.... Having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority. Applied to an officer whose term has expired and who has consequently no further official authority; and also to an instrument, power, agency, etc., which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect.

In *Jeffers, supra* at 207–08, 830 P.2d at 507–08, this court further explained the doctrine of *functus officio* as follows:

> When an award has been made, the authority of the arbitrator comes to an end. He becomes functus officio. *Under general principles of arbitration law he cannot in any way change or explain his award unless his authority is reinstated in writing by all parties, or the matter is returned to him by the appropriate court.*

DOMKE ON COMMERCIAL ARBITRATION § 32:01, at 458–59 (rev. ed.1991) (footnotes omitted). The policy underlying the common law principle that the arbitrator becomes *functus officio* once he or she makes and publishes a final award, is

> an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

73 Haw. at 207–08, 830 P.2d at 507–08 (some emphases in original and some added) (citations omitted).

██ In this case, the doctrine of *functus officio* does not apply because the parties by word and conduct unequivocally gave the Arbitrator the authority to reconsider and modify his Draft Award and to correct any errors in his Draft Award. Although the Arbitrator performed his duty by holding an arbitration hearing and issuing a Draft Award, he had not yet entered a final award, inasmuch as he expressly retained the authority to do so. In other words, through the agreement and consent of the parties, the Arbitrator's authority continued through the issuance of the Draft Award until the issuance of the Final Award. In addition, the danger of outside communication and unilateral influence that underlies the doctrine of *functus officio* is not present in this case. Because the parties in this case had the same opportunity to make written presentations after the Draft Award, there was no danger of outside communication or unilateral influence. Therefore, the Arbitrator did not exceed the scope of his authority in amending the Draft Award to reflect his Final Award.

██ Our conclusion in this case is further supported by the actions of Claimant. Although Claimant asserts that the Arbitrator was *functus officio* after the issuance of the Draft Award, his actions belie his argument. Claimant approached the Arbitrator after the issuance of the Draft Award in the attempt to secure a more favorable award. Only after the Arbitrator reviewed the Draft Award, the arguments of the parties and issued the lower, Final Award did Claimant try to unravel the award. If Claimant believed that the Arbitrator was *functus officio* after the Draft Award had been issued, yet the award contained a clerical error, miscalculation of figures, or was incomplete, he should have availed himself of the procedure to modify the award set forth in HRS § 658–

10(1).[5] In order to correct a final, flawed award, any party should file a motion in the circuit court to modify the award. We disagree with Claimant that the Arbitrator was *functus officio* once the Draft Award was issued for the reasons that the Arbitrator clearly only intended to issue an interlocutory award and because Claimant availed itself of the appropriate procedure to rectify the Draft Award only complaining when the modification became unfavorable.

## C. *Finality of the Arbitration Award*

 Claimant next contends that the circuit court erred in concluding that the Draft Award of January 3, 1997 was not a final award. We disagree.

An arbitration award is considered to be final when consideration of the submitted issues has been concluded and a resolution reached. *Brennan v. Stewarts' Pharmacies, Ltd.*, 59 Haw. 207, 579 P.2d 673 (1978). Although there is no requirement that the award be self-executing, and although "it is not faulty because litigation may ensue in enforcing it," 6 C.J.S. Arbitration § 111b (1975), it should be "sufficiently definite that only ministerial acts of the parties are needed to carry it into effect," *Mercury Oil Refining Co. v. Oil Workers International Union*, 187 F.2d 980, 982 (10th Cir.1951); *see also* 6 C.J.S. Arbitration § 115 (1975), and "clear enough to indicate unequivocally what each party is required to do." Martin Domke, Domke on Commercial Arbitration § 28:04 (Rev.Ed.1984) (Domke). *Strickland v. Seiple*, 5 Haw.App. 168, 171, 680 P.2d 533, 535 (1984); *see also Jeffers*, 73 Haw. at 208, 830 P.2d at 508. In addition, "[a]n award should be certain and must leave open no loophole for future dispute and litigation; when it is incomplete, uncertain, and indefinite it cannot be sustained." *Strickland*, 5 Haw.App. at 173, 680 P.2d at 536 (citing 5 Am.Jur.2d, *Arbitration and Award* § 141 at 622 (1962)).

In support of his contention, Claimant relies on this court's decision in *Jeffers*. In *Jeffers*, this court considered, *inter alia*, the effect of an amended award entered subsequent to an original award. 73 Haw. at 207–10, 830 P.2d at 507–09. After the circuit court in *Jeffers* granted the claimant's motion to compel arbitration, the claimant filed a demand for arbitration with the American Arbitration Association (AAA). *Id.* at 203, 830 P.2d at 505–06. On January 29, 1990, the arbitrator in *Jeffers* issued an award in the amount of $18,000 in favor of the respondents (the original award). Subsequently, the respondents wrote to the AAA requesting clarification on various issues. *Id.* at 204, 830 P.2d at 506. Although the claimants opposed reopening of the arbitration proceedings, the arbitrator announced that "on his own motion ... [he had] decided to reopen the hearing to consider modifying the award[.]" *Id.* Thereafter, in his amended award, the arbitrator increased the amounts award to respondents. *Id.* at 205, 830 P.2d at 506. Because the original award stated that it was "in *full settlement of all issues* submitted to arbitration[,]" this court concluded that the arbitrator lost all authority in the proceeding once he issued the original award. *Id.* at 208, 830 P.2d at 508.

 The instant case is distinguishable from *Jeffers*. First, although the Draft Award in this case stated that it would constitute a "final determination and resolution of all issues and claims," the Draft Award clearly and unambiguously stated:

> The Arbitrator retains jurisdiction to address, clarify, and resolve any issues or questions raised by the parties within fourteen (14) days hereof concerning modification, implementation, and or interpretation of [the Draft Award].

(Emphasis added.) Similar language, indicating that the award was merely a "draft" or "preliminary," was not present in *Jeffers*.

Second, prior to the issuance of the Draft Award, the parties and the Arbitrator had discussed and agreed that the Arbitrator would be circulating a draft decision for review and comment by the parties. In contrast, the parties in *Jeffers* did not expect that the arbitrator would be able to reconsider and amend the award.

---

**5.** *See supra* note 3.

Third, not only did Claimant in this case fail to object to this procedure, but Claimant availed itself of this procedure by requesting that the Arbitrator increase the amount awarded to Claimant. Claimant argued that the Draft Award was final only after its request to increase its award had failed. Given these facts, it is apparent that the parties intended the Draft Award of January 3, 1997 to be merely a preliminary award and *not* a final award—a situation not present in *Jeffers*. On this basis, we distinguish this case from *Jeffers*.[6]

Instead, the language of the Draft Award in this case that "the Arbitrator retains jurisdiction" to consider modifications. to the award would reasonably lead a person to believe that the Draft Award was uncertain, open to dispute, and subject to reconsideration. Indeed, given the language reserving jurisdiction to the Arbitrator to consider modifications prevents the Draft Award in this case from being either "sufficiently definite that only ministerial acts of the parties are needed to carry it into effect" or "clear enough to indicate unequivocally what each party is required to do." *Strickland*, 5 Haw. App. at 171, 680 P.2d at 535. Therefore, the circuit court correctly concluded that the Draft Award was not final.

## IV. CONCLUSION

For the foregoing reasons, we affirm the circuit court's order.

---

**6.** As an example of a similar situation, see *Mathewson*, 82 Hawai'i at 67, 919 P.2d at 979 (involving a "Final Decision" issued after a "Preliminary Decision" that expressly reserved jurisdiction to the arbitrator to resolve the question of damages if the parties disagreed on the amount).

Although this court did not address the issue whether the "Preliminary Decision" was a final decision for purposes of HRS § 658–8 in *Mathewson*, "draft" or "preliminary" orders that are *not* intended to be final are not unusual.