FREDERICK CHUN, Plaintiff-Appellant, *v.* LIBERTY MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant-Appellee

NO. 9501

(CIVIL NO. 65479)

ALEXANDER W. THOENE, JR., Plaintiff-Appellant, *v.* LIBERTY MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant-Appellee

(CIVIL NO. 67716)

ALEXANDER W. THOENE, JR., Plaintiff-Appellant, *v.* LIBERTY MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant-Appellee

(CIVIL NO. 67882)

NO. 9538

AUGUST 28, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

These consolidated appeals from the judgments in favor of defendant Liberty Mutual Insurance Company (Liberty Mutual) are (1) by plaintiff Frederick Chun (Chun) in Civil No. 65479, which is our No. 9501, and (2) by plaintiff Alexander W. Thoene, Jr. (Thoene) in the consolidated case of Civil Nos. 67716 and 67882, which constitute our No. 9538.

The sole issue on appeal is whether no-fault monthly earnings loss benefits are payable secondarily to the regular monthly salary paid to an injured police officer during the period of his total disability pursuant to Hawaii Revised Statutes (HRS) § 79-15 (1976 & Supp. 1983).[1] We answer no and reverse.

---

[1] In 1979 and 1980, HRS § 79-15 read as follows:

Whenever any police officer, firefighter, or any other officer or employee who is temporarily exposed to unusually hazardous conditions, or who is a member of a class, recognized by the action of repricing, to be a class exposed to unusually hazardous conditions, receives personal injury arising out of and in the performance of his duty and without negligence on his part, he shall be placed on accidental injury leave unless suspended or dismissed for cause, and continued on the payroll of his respective department at his full regular monthly salary during the first four months of his disability and thereafter during the period of his total disability from work at sixty per cent of his regular monthly salary, as though he did not sustain an industrial injury. He shall be entitled to all rights and remedies allowed under chapter 386, provided that any salary paid under this section shall be applied on account of any compensation allowed him under chapter 386 or any benefits awarded him under part III of chapter 88.

HRS chapter 386 is the workers' compensation law and part III of HRS chapter 88 (HRS §§ 88-151 through 88-171) covers the policemen, firemen, and bondsmen pension system except for those who entered service after December 31, 1927.

I.

A.

In Civil No. 65479, police officer Chun was injured in an accident while operating a motorcycle on May 4, 1979. His injuries rendered him unfit for duty for 45 working days. During the period of his disability, he was placed on accidental injury leave and received his regular monthly salary of $1,178[2] under HRS § 79-15. Liberty Mutual was his no-fault insurer.

On May 1, 1981, Chun sued Liberty Mutual basically for monthly earnings loss benefits under the No-Fault Insurance Law, HRS chapter 294 (No-Fault Law). By its order filed on June 28, 1983, the trial court granted Liberty Mutual's motion for summary judgment and a judgment was entered on the same date.

B.

In Civil Nos. 67716 and 67882, police officer Thoene was injured while on duty in automobile accidents occurring on October 14, 1979 and February 24, 1980. After each accident Thoene was placed on accidental injury leave for a period of time[3] and received his HRS § 79-15 regular monthly salary[4] while he was disabled. Liberty Mutual was also the no-fault insurer of Thoene.

Thoene sued Liberty Mutual basically to recover no-fault monthly earnings loss benefits, plus general and punitive damages for the insurer's willful and wanton denial of no-fault benefits. After the consolidation of the cases on November 17, 1982, the trial court granted Liberty Mutual's motion for summary judgment on August 11, 1983. The entry of judgment followed on August 15, 1983.

---

[2] Chun claimed that had he been able to work, his earnings would have approximated $1,423 per month, inclusive of hazard and night differential pay.

[3] Liberty Mutual states that as a result of the two accidents, Thoene was unable to work for approximately 74 working days. The record discloses that Thoene lost 34 working days after the October 14, 1979 accident but it is unclear how many working days he lost after the February 24, 1980 accident.

[4] The record is silent regarding the amount of Thoene's regular monthly salary and his actual monthly salary, inclusive of premium pay, prior to the accidents.

## II.

Liberty Mutual contends that (1) under HRS § 294-5(b), no-fault benefits are to be paid "secondarily" to workers' compensation benefits received by a no-fault insured; (2) the regular monthly salary paid to an injured police officer under HRS § 79-15 is "equivalent to" or "in lieu of" workers' compensation benefits; (3) the HRS § 79-15 payments received by Chun and Thoene exceeded $800 per month;[5] and (4) therefore, Liberty Mutual had no legal obligation to pay any no-fault earnings loss benefits to either of them. We disagree.

Upon incurring an "accidental harm,"[6] a no-fault insured is entitled to receive from the no-fault insurer "no-fault benefits"[7] including, *inter alia,* benefits for "monthly earnings loss," the measurement of which is covered in HRS § 294-2(10)(C) (1976)[8] as follows:

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period which the accidental harm results in the inability to engage in available and appropriate gainful activity, or

(iii) A monthly amount equal to the amount, if any, by which the lesser of (i) or (ii) exceeds any lower monthly earnings of the person sustaining injury at the time he resumes gainful activity.

---

[5] Although the record does not state the amount of the regular monthly salary paid to Thoene under HRS § 79-15, it is safe to assume that it exceeded $800 per month.

[6] HRS § 294-2(1) (1976) defines "accidental harm" to mean "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person."

[7] HRS § 294-2(10) (1976 & Supp. 1983) defines "no-fault benefits."

[8] Effective June 7, 1980, HRS § 294-2(10)(C) was amended by deleting (iii) thereof. Act 234, § 1, 1980 Haw. Sess. Laws 412.

However, payments of no-fault benefits are subject to HRS § 294-5(b)[9] which provided in relevant part in 1979 and 1980 as follows:

All no-fault benefits shall be paid secondarily and net of any benefits a person is entitled to receive because of the accidental harm from social security laws or workers' compensation laws; . . . .

Act 33, § 1, 1978 Haw. Sess. Laws 41.

We hold that the language in HRS § 294-5(b) is plain, clear, and unambiguous: the payment of no-fault benefits is secondary only to social security and workers' compensation benefits. No-fault benefits are fully payable to an insured receiving any other benefits.

### III.

We are "bound by the plain, clear and unambiguous language of a statute unless the literal construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the statute." *In re the Estate of Spencer,* 60 Haw. 497, 499, 591 P.2d 611, 613 (1979). *See also Chun v. Employees' Retirement System of the State of Hawaii,* 61 Haw. 596, 607 P.2d 415 (1980); *In re Grayco Land Escrow, Ltd.,* 57 Haw. 436, 559 P.2d 264, *cert. denied* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); *Mabe v. Real Estate Commission,* 4 Haw. App. 552, 670 P.2d 459 (1983).

### A.

There is no dispute that the language in HRS § 294-5(b) is plain, clear, and unambiguous. It expressly states that no-fault

---

[9] Under HRS § 294-5(b), the term "net" becomes applicable if the no-fault benefits are payable secondarily to social security or workers' compensation benefits. In *Maldonado v. Transport Indemnity,* 5 Haw. App. 185, 683 P.2d 394, *rev'd,* 67 Haw. 347, 687 P.2d 1 (1984), we construed "net" to mean the difference between the insured's monthly workers' compensation income benefit and the statutory no-fault monthly earnings loss benefit, which is limited to $800, rather than the insured's actual monthly earnings loss. In *Maldonado,* the no-fault insurer was not obligated to pay any no-fault monthly earnings loss benefit since the monthly workers' compensation income benefit exceeded $800.

(Supp. 1983), a police officer or firefighter has the benefit of a presumption that some types of incapacitation or death are the result of inherent occupational hazard. A fireman also has the benefit of a similar presumption when applying for service-connected occupational disability retirement under HRS § 88-79 (1976).

### IV.

We hold that no-fault monthly earnings loss benefits are payable primarily, and not secondarily, to HRS § 79-15 benefits. Liberty Mutual, therefore, is obligated to pay no-fault earnings loss benefits at the rate of $800 per month to Chun and Thoene, respectively, during their respective periods of disability, subject to the aggregate limit of $15,000 per person imposed by HRS § 294-2(10) (1976). Accordingly, we reverse and remand the case for further proceedings consistent herewith.

Reversed and remanded.

*Nathan J. Sult (David L. Turk* with him on the briefs; *David L. Turk,* Attorney at Law, a Law Corporation, of counsel) for plaintiffs-appellants Frederick Chun and Alexander W. Thoene, Jr.

*David A. Nakashima (Cheryl A. Nakamura* with him on the brief; *Hamilton, Gibson, Nickelsen, Rush & Moore,* of counsel) for defendant-appellee.