947 P.2d 371

**Kathleen N. MOSS, Plaintiff–Appellee,**

v.

**AMERICAN INTERNATIONAL ADJUSTMENT COMPANY, INC., Defendant-Appellant.**

**No. 19232.**

Supreme Court of Hawai'i.

Oct. 29, 1997.

John T. Hassler (Carleton B. Reid, with him on the briefs, of Reid, Richards & Miyagi), Honolulu, for defendant-appellant.

Kelly K. Kotada and Frederick W. Rohlfing, III, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Defendant-Appellant American International Adjustment Co., Inc. (AIAC) appeals from the order denying its motion for the appointment of an arbitrator to decide a no-fault dispute between AIAC and Plaintiff-Appellee, Kathleen N. Moss. Because (1) Hawai'i Revised Statutes (HRS) § 431:10C–213 (1993) does not provide independent authority to compel arbitration in the absence of a mandatory agreement to do so, (2) the

parties had not agreed to compulsory arbitration, and (3) Moss chose circuit court as her forum, we affirm the order of the circuit court.[1]

## I. BACKGROUND

On September 11, 1993, Moss argued with another driver, James Tanimura, over a parking stall. After she parked her car, she allegedly walked over and began to kick Tanimura's vehicle. At some point during the altercation, it appears that Tanimura's automobile rolled over Moss's leg.

Following the incident, Moss sought to recover no-fault benefits for accidental harm suffered as a pedestrian by filing a claim with AIAC, the adjusting arm of Tanimura's insurer, AIG Insurance Company, Inc., pursuant to HRS § 431:10C–304(1)(A)(ii).[2] AIAC asked Moss to provide a sworn statement, as required by Tanimura's policy, but Moss refused to do so. Subsequently, AIAC denied Moss's request. Moss then filed an action for declaratory judgment in the First Circuit Court on November 26, 1993, seeking, *inter alia*, a judgment that she was entitled to no-fault benefits and did not have to give a sworn statement to receive them.[3] On June 23, 1994, Moss filed a motion for partial summary judgment, which the court denied.

In a letter dated January 10, 1995, AIAC's attorney suggested that the parties submit the dispute to binding arbitration. Thereafter, on January 30, 1995, Moss's attorney agreed, provided that certain conditions were met. The parties, however, never reached a meeting of the minds as to the parameters of arbitration.

Moss filed a withdrawal and substitution of counsel on June 30, 1995. On July 6, 1995, AIAC filed a motion for the appointment of an arbitrator to determine a no-fault dispute, arguing that HRS § 431:10C–213 provided authority, independent of an arbitration agreement, upon which the court could compel arbitration. Moss opposed AIAC's motion and argued that (1) Hawaii's no-fault statute permitted judicial review of any denial of no-fault benefits and (2) AIAC's motion was untimely, inasmuch as AIAC filed it nineteen months after Moss first filed her complaint. The circuit court denied the motion, and thereafter AIAC appealed.[4]

## II. STANDARDS OF REVIEW

Conclusions of law are not binding upon an appellate court and, therefore, the court reviews them *de novo* under the "right/wrong" standard. *State v. Tuipuapua*, 83 Hawai'i 141, 145, 925 P.2d 311, 315 (1996). Under this "standard we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller*, 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983) (citation omitted).

We also review the interpretation of statutes *de novo* under the "right/wrong" standard. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52

---

1. As a preliminary matter, Moss argues that this court lacks appellate jurisdiction because a final judgment has not been entered in this case. Moss is incorrect—the court does have jurisdiction, under *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 105–06, 705 P.2d 28, 33–34 (1985), because the circuit court's decision is an appealable collateral order.

2. HRS 431:10C–304 provides in pertinent part:

   **Obligation to pay no-fault benefits.** For purposes of this section, the term "no-fault insurer" includes no-fault self-insurers. Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:
   (1) Except as otherwise provided in section 431:10C–305(d):
   (A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the no-fault benefits payable for wage loss and other expenses to that person under section 431:10C–103(10)(A)(iii) and (iv) as a result of the injury:
   (i) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;
   (ii) *Any pedestrian* (including a bicyclist); or
   (iii) Any user or operator of a moped as defined in section 249–1[.]
   (Bold in original.) (Emphasis added.)

3. Moss eventually gave AIAC a sworn statement.

4. Because we resolve this case on other grounds, we need not address the issue of timeliness.

(1995). "The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Kaakimaka,* 84 Hawai'i 280, 289, 933 P.2d 617, 626, (quoting *State v. Ortiz,* 74 Haw. 343, 352, 845 P.2d 547, 551, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993)), *reconsideration denied,* 84 Hawai'i 496, 936 P.2d 191 (1997); *see also Mathewson v. Aloha Airlines, Inc.,* 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996). We read statutory language in the context of the entire statute "and construe it in a manner consistent with its purpose." *Mathewson,* 82 Hawai'i at 71, 919 P.2d at 983 (citation and internal quotation marks omitted). "A rational, sensible and practicable interpretation [of a statute] is preferred to one which is unreasonable or impracticable," *State v. Lobendahn,* 71 Haw. 111, 112, 784 P.2d 872, 873 (1989) (citations and internal quotation marks omitted) (brackets in original), because "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo,* 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (quoting *State v. Malufau,* 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) (citation and internal quotation marks omitted)).

## III. *DISCUSSION*

The legislature has provided an insured with three mechanisms by which he or she may seek resolution of a no-fault controversy: (1) an administrative hearing under HRS § 431:10C–212 (1993); (2) arbitration pursuant to HRS § 431:10C–213 (1993); and (3) a suit in state court as provided by HRS § 431:10C–314 (1993). *See Richard v. Metcalf,* 82 Hawai'i 249, 255, 921 P.2d 169, 175 (1996). An insurance company may pursue either arbitration or file a lawsuit. HRS §§ 431:10C–213 and –314. We discern practical problems with this structure, insofar as (1) there is no indication from the language of the statute that the legislature intended that one party could bind the other to its choice of forum and (2) the potential end result of this statutory scheme is that insurer and insured may file multiple and identical actions that vary only with respect to legal arenas. Thus, parties could forum-shop in

the hope of attaining a more favorable result. Because we view the selection of a forum as critical to the disposition of this appeal, we deal with the issue in greater depth *infra* in part III.C.

For example, in the instant case, Moss filed a declaratory action in circuit court. Thereafter, AIAC requested that the circuit court name an arbitrator pursuant to HRS § 431:10C–213. Consequently, we must answer three questions on appeal: (1) whether the parties entered into a mandatory arbitration agreement at some point; (2) whether HRS § 431:10C–213 provides independent authority to compel arbitration in the absence of an agreement to do so; and (3) whether AIAC was bound to the forum of the circuit court once Moss filed a declaratory action.

Under these facts, we hold that AIAC was bound; however, this may not always be the case. We consider first whether the parties agreed to mandatory arbitration, either through the insurance contract or subsequent to the genesis of this dispute.

### A. *The Parties Did Not Have an Arbitration Agreement.*

■ This court has the authority to decide whether parties have entered into a valid agreement to arbitrate. *Koolau Radiology, Inc. v. Queen's Medical Center,* 73 Haw. 433, 447, 834 P.2d 1294, 1301 (1992). The relevant portions of Chapter 658 state the following:

§ 658–1 **Agreement to submit.** *A provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract* or the refusal to perform the whole or any part thereof, *or an agreement in writing to submit an existing controversy to arbitration pursuant to section 658–2, shall be valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.*

. . . .

§ 658–5 **No trial if issue referable to arbitration.** *If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writ-*

*ing, the circuit court,* upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, *shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement*[.]

(Emphases added.) *See also Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 107, 705 P.2d 28, 35 (1985) (There can be no trial if a party invokes a right to settle the dispute by arbitration under a written agreement.).

▮ In this case, Moss sought to recover no-fault benefits as a *pedestrian* under HRS § 431:10C–304(1)(A)(ii), not under a contract with AIAC. In other words, there was no prior "agreement in writing" to arbitrate between Moss and AIAC. Inasmuch as judicial review of arbitration decisions is very limited, *Mathewson,* 82 Hawai'i at 69, 919 P.2d at 981, arbitration must be agreed upon by the parties and evinced by a written agreement, despite the strong policy in its favor. HRS § 658–1; *see also Brown v. KFC Nat'l Management Co.,* 82 Hawai'i 226, 238–40, 921 P.2d 146, 158–60, *reconsideration denied,* 82 Hawai'i 360, 922 P.2d 973 (1996).

▮ Additionally, AIAC argues that Moss's attorney subsequently and "essentially agreed to arbitrate subject to certain conditions" in his letter of January 30, 1995. The trial court disagreed and found that the parties failed to achieve a meeting of the minds with respect to arbitration. We concur with the trial court.

Moss's attorney responded to AIAC's request for arbitration as follows:

My client will agree to binding arbitration regarding the AIAC no-fault claim. This is assuming that we can reach agreement on an arbitrator. It would also be required that any evidence, testimony or other matters coming out of arbitration would be inadmissible at any subsequent proceeding, and any decision of the arbitrator would be inadmissible in any subse-

quent proceeding.... It would also be agreed that any decision in the arbitration would have no effect regarding the personal injury action, by way of collateral estoppel, res judicata, or any other effect.

This response was a counter-offer, not an acceptance. "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *Restatement (Second) of Contracts* § 59 (1981). This has "[t]he effect of ... depriv[ing] the purported acceptance of effect." *Id.* at cmt. a. AIAC did not respond to this counter-offer.

The circuit court found that, because Moss and AIAC failed to finalize the terms by which arbitration would be governed, Moss never agreed to arbitrate the no-fault dispute:

[MOSS'S COUNSEL]: ... I'd like to correct counsel's representation. The Plaintiff has never agreed to arbitration of this matter.

THE COURT: I understand. There were conditions attached.

[MOSS'S COUNSEL]: That's correct, Your Honor.

THE COURT: And so you never had a meeting of the minds.

[MOSS'S COUNSEL]: That's correct, Your Honor....

. . . .

THE COURT: I'm in agreement with Plaintiff's counsel. I'll deny the motion.

Because "[i]t is an elementary rule of contract law that there must be a meeting of the minds on all essential elements or terms in order to create a binding contract," *Malani v. Clapp,* 56 Haw. 507, 510, 542 P.2d 1265, 1267 (1975), and Moss and AIAC did not do so, they failed to enter into a binding arbitration contract. Accordingly, we decline to disturb on appeal the circuit court's finding that the parties did not agree to arbitrate because there was no meeting of the minds.[5]

5. In addition, Moss cites *National Union Fire Ins. Co. v. Reynolds,* 77 Hawai'i 490, 889 P.2d 67 (App.1995), to support her argument that issues of "coverage" under an insurance policy should

be decided by the trial court. The Intermediate Court of Appeals, in dealing with an underinsured motorist provision in an insurance contract, held that

B. *HRS § 431:10C–213 (1993) Does Not Provide Independent Authority to Compel Arbitration in the Absence of a Mandatory Agreement to Arbitrate.*

■ HRS § 431:10C–213, provides:

(a) A claimant, insurer, or provider of services may submit any dispute relating to a no-fault policy to an arbitrator by filing a written request with the clerk of the circuit court in the circuit where the accident occurred.

(b) The administrative judge of each circuit court shall maintain a current list of persons qualified and willing to act as arbitrators and shall, within ten days of the date of filing of a request for arbitration, appoint an arbitrator from such list to hear and determine the claim.

(c) Except as otherwise provided herein, *the arbitration shall be in accordance with and governed by the provisions of chapter 658.*

(Emphasis added.)

In summary, HRS § 431:10C–213 states that the arbitration process will be governed by chapter 658, which mandates that an arbitration agreement be in writing. HRS § 658–1. If it is, HRS § 658–5 makes arbitration binding upon the parties, and the circuit court must stay trial, *see Bateman Constr., Inc. v. Haitsuka Bros., Ltd.,* 77 Hawai'i 481, 484, 889 P.2d 58, 61, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995), unless a party has waived its right to arbitration. *See Swinerton & Walberg,* 68 Haw. at 108, 705 P.2d at 35–36. Clearly, the threshold requirement for arbitration under HRS § 431:10C–213 is a written agreement. Because Moss and AIAC lacked such · an underlying contract, in compliance with HRS § 658–1, we hold that HRS § 431:10C–213

does not, itself, provide independent authority to compel arbitration.

C. *Policies Impacting on the Remedies in HRS Chapter 431*

■ AIAC also argues that it was not required to remain in circuit court once Moss filed an action for a declaratory judgment. Moss disagrees, claiming that she bound AIAC to that forum. While we have decided, *supra,* that there was no arbitration agreement in this case, AIAC and Moss's arguments presents us with another issue: was AIAC bound to Moss's chosen forum once Moss filed an action in circuit court?

As previously noted, the legislature has provided three arenas in which litigants may settle no-fault disputes. *See* HRS §§ 431:10C–212, –213, and –314. Nevertheless, we believe that the legislature did not intend parties to engage in multiple, concurrent proceedings arising from the same claim and dealing with identical issues, as such a result would fly in the face of several well-established public policies. We now examine these policy interests, which include considerations in favor of reducing no-fault premiums, encouraging the prompt resolution of claims, the efficient use of judicial resources, deterring forum-shopping, and encouraging arbitration.

In 1973, for example, the legislature amended the existing motor vehicle insurance laws and restructured them into a no-fault system. Some of the stated goals behind these revisions were to

(1) Provide for a speedy, adequate and equitable reparation for those injured or otherwise victimized;

(2) Provide for the stabilization and reduction of motor vehicle insurance premium rates; [and]

---

while the standard language [in an arbitration provision] may be broad enough to envelop more than one interpretation, that is far from providing "clearly and unmistakably," that coverage issues are to be decided by arbitration rather than by the courts. Consequently, *we hold that under the standard arbitration clause in the underinsured motorist provision,* arbitration on the question of whether the insured was "legally entitled to recover damages" is limited to a determination of the offending motorist's fault and his

or her resulting liability to the person covered under the policy, and does not include the ascertainment of whether underinsured coverage applies under any particular circumstance.

*Id.* at 494, 889 P.2d at 71 (emphasis added) (citations and footnotes omitted) (some brackets in original and some added). Moss's reliance on *Reynolds* is misplaced because she is not seeking no-fault benefits pursuant to her insurance contract, but rather as a pedestrian under HRS § 431:10C–304(1)(A)(ii).

(3) Provide for insurance coverage for all who require it, at a cost within the reach of every licensed driver[.]

Hse. Conf. Comm. Rep. No. 13, in 1972 House Journal, at 1219, 1221. In 1987 and 1992, the legislature further revised the no-fault code, explaining, *inter alia*, that reduction and stabilization of rates were of primary concern. *See* Hse. Conf. Comm. Rep. No. 53, in 1987 House Journal, at 1022; Hse. Conf. Comm. Rep. No. 150, in 1992 House Journal, at 878; *see also Chun v. Liberty Mut. Ins. Co.*, 5 Haw.App. 290, 296, 687 P.2d 564, 567, *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1984).

This court also has recognized the importance of the efficient use of judicial resources. *See, e.g., Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 510, 880 P.2d 169, 185 (1994) (recognizing the need for prompt, efficient resolution of civil disputes before trial, in part because of the strain on judicial resources); *State ex rel. Price v. Magoon*, 75 Haw. 164, 189, 858 P.2d 712, 724, *reconsideration denied*, 75 Haw. 580, 861 P.2d 735 (1993) (recognizing the need to conserve scarce judicial resources); *Kauhane v. Acutron Co.*, 71 Haw. 458, 463, 795 P.2d 276, 278 (1990) (doctrine of res judicata serves to conserve judicial resources); *Hawaii Hous. Auth. v. Lyman*, 68 Haw. 55, 78, 704 P.2d 888, 902 (1985) (trial court has the discretion to weigh the potential for waste of judicial resources); *Arakaki v. Arakaki*, 54 Haw. 60, 64, 502 P.2d 380, 383 (1972) (one purpose of a bill concerning property settlements during divorce proceedings is to conserve judicial resources).

In a similar vein, "the practice of 'Forum Shopping'" should be discouraged as "inimical to sound judicial administration." *Jordan v. Hamada*, 64 Haw. 446, 448, 643 P.2d 70, 72 (1982) (citation and internal quotation marks omitted). *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ("the twin aims of the *Erie* rule [are the] discouragement of forum-shopping and avoidance of inequitable administration of the laws.")

Finally, "we have recognized time and again that the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Richardson*, 76 Hawai'i at 510, 880 P.2d at 185 (quoting *Leeward Bus Co. v. City & County of Honolulu*, 58 Haw. 64, 71, 564 P.2d 445, 449 (1977) (citation omitted)) (internal quotation marks omitted). *See also Mathewson*, 82 Hawai'i at 69, 919 P.2d at 981; *Mars Constructors, Inc. v. Tropical Enters., Ltd.*, 51 Haw. 332, 336, 460 P.2d 317, 319 (1969).

> [W]e emphasize the importance of utilizing alternative methods of dispute resolution in an effort to reduce the growing number of cases that crowd our courts each year. This court has long recognized the strong public policy supporting Hawai'i's arbitration statutes as codified in HRS Chapter 658. We have stated that the proclaimed public policy is to encourage arbitration as a means of settling differences and thereby avoiding litigation.

*Lee v. Heftel*, 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996) (citations, ellipsis points, and internal quotation marks omitted).

▆ Accordingly, in order to effectuate the intent of the legislature, we hold that the first party to choose a forum for the resolution of a no-fault dispute binds the other party to that forum *unless* the circuit court finds that the parties have entered into a mandatory and binding arbitration agreement.[6] To hold otherwise would create a patently absurd result: claimants could file as many as three separate yet concurrent actions, including a motion for an order appointing an arbitrator, a request for an administrative hearing, and an action for judicial review. Such an outcome would waste time, monies, and lead to inconsistent and unpredictable application of the law, results which would hamper, not further, the aforementioned public policies.

▆ Consequently, we apply the general rule, enunciated *supra*, that the first party to choose a forum, in the absence of a *mandatory* arbitration agreement, binds the other party to that forum. Accordingly, when

6. In that case, the circuit court must compel arbitration under HRS § 658–5.

Moss filed an action for a declaratory judgment in circuit court, she bound AIAC to circuit court. Unless Moss and AIAC agree otherwise, that is where the disposition of this action must proceed to its conclusion.

## IV. *CONCLUSION*

Because (1) there was no agreement between the parties to resolve disputes through mandatory arbitration, (2) HRS § 431:10C–213 (1993) does not provide independent authority to compel arbitration in the absence of a written contract, and (3) Moss acted first and chose circuit court as her forum, we affirm the order of the circuit court.