**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000093**
**24-MAY-2023**
**07:55 AM**
**Dkt. 55 SO**

NO. CAAP-22-0000093

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
RACHID MEKKAOUI, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-21-02056)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Rachid Mekkaoui (**Mekkaoui**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment (**Judgment**), entered on January 31, 2022, in the District Court of the First Circuit, Honolulu Division (**District Court**).[1]  For the reasons explained below we affirm the Judgment, which dismissed the case against Mekkaoui without prejudice.

On December 17, 2021, Mekkaoui was charged by Complaint with Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (2020).  The Complaint was signed by a deputy prosecuting attorney, but was not subscribed under oath by a complainant or accompanied by a declaration in lieu of affidavit.

On December 10, 2021, the Hawai'i Supreme Court decided State v. Thompson, 150 Hawai'i 262, 500 P.3d 447 (2021), which held that a penal summons or arrest warrant cannot be issued on

---

[1]  The Honorable Alvin Nishimura presided.

the basis of a complaint that is not compliant with HRS § 805-1.[2] Id. at 267-69, 500 P.3d at 452-54; see State v. Mortensen-Young, 152 Hawaiʻi 385, 393-95, 526 P.3d 362, 370-72 (2023) (construing Thompson).

On December 22, 2021, Mekkaoui filed a motion to dismiss the Complaint (**Motion to Dismiss**) based on the Thompson ruling. The State filed a memorandum in opposition to the Motion to Dismiss.

On January 27, 2022, Mekkaoui filed no-contest plea documents, based apparently on terms that had been posted on a listserv of the Hawaii Association of Criminal Defense Lawyers (**HACDL**) in the wake of the Thompson ruling, and modeled on a plea agreement that had been offered during the COVID shutdown. The plea documents were emailed by defense counsel to the general office email of the Department of the Prosecuting Attorney.

On January 28, 2022, Florence Nakakuni (**Nakakuni**), Misdemeanor Prosecution Division Chief for the Department of the Prosecuting Attorney, emailed defense counsel, stating in part:

> [W]hatever might have been on the HACDL website is not an offer to your client or to anyone else.
>
> In the future, please contact me or one of the Team Captains if you are interested in a change of plea for one of your clients. Just a kindly reminder that you can't just upload change of plea forms without having formal plea negotiations and approval from the Prosecutors.

Nakakuni further stated:

---

[2] At the time of the alleged offense here and in Thompson, HRS § 805-1 (2014) provided, in pertinent part:

> When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court. . . . Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at trial. The warrant may be in the form established by the usage and practice of the issuing court.

> In the interests of justice and to facilitate a resolution, I reviewed the reports in the case and based on the facts of Mr. Mekkaoui's case and his history, we offer to amend the OVUII to a Reckless. You must waive any procedural defects of the amendment and the Complaint. You are free to request a deferral; we will make a record objection.

Later the same day, defense counsel responded to Nakakuni via email, "I will (again) recommend to him that he take the dismissal. The judges and HACDL are treating it like it is a deal for everyone who qualifies." About twenty minutes later, defense counsel emailed Nakakuni: "My client accepts your offer to reduce the charge to a reckless. We will argue over sentencing including the deferral."

On January 29, 2022, Nakakuni emailed defense counsel: "[G]ot it. Thank you." Later that day, defense counsel filed revised no-contest plea documents. It appears that defense counsel also emailed Nakakuni: "Please find attached the revised plea papers I filed under seal today pursuant to our agreement."

The District Court held a hearing on January 31, 2022. The following exchange occurred:

> [DEFENSE COUNSEL:] . . . .
>
> Your honor, we have a deal in place to resolve this matter. I filed two sets of plea documents. The first one I was told by Ms. Nakakuni was not offered to Mr. Mekkaoui so we have renegotiated and Mr. Mekkaoui and I redid the paperwork which was filed the 29th. And basically it is -- they are dropping this to a reckless driving and making a record objection to our request that you impose a [deferral on Mr. Mekkaoui].
>
> . . . .
>
> THE COURT: Okay.
>
> [DEPUTY PROSECUTING ATTORNEY (**DPA**)]: And, yes, your honor, I can articulate the terms.
>
> So the first term is the State will amend the OVUII to HRS 291-2 reckless driving. Defendant to waive procedural defects of the amendment and the complaint. Defendant . . . will be moving for referral [sic]. State will make a record objection.
>
> There is either a $1,000 fine or 72 hours of community service work; 14 hours substance abuse rehabilitation program; substance abuse assessment and treatment if recommended; DUI DE cost of $100; neurotrauma surcharge [$]25; $75 probation fee; $70 -- $7.00 DE; $30 CICF.
>
> Defendant must inform Adult Client Services Branch of all infractions, citations, and arrests. Defendant must

comply with all terms of the ADLRO. Defendant cannot drive for one year unless [he] installs an ignition interlock device on any vehicle operated by [him].

And I don't believe there's any restitution in this case. But restitution if applicable.

[DEFENSE COUNSEL]: Judge, that is not what we agreed on. That's what I thought was available to all defendants to qualify. When I filed the papers with those terms on there, I was specifically told by Ms. Nakakuni that that was not available to Mr. Mekkaoui and instead they were dropping it to reckless . . . and objecting to our request for a deferral. None of those other terms were on there. The available punishment for a reckless driving is $1,000 dollars fine, 30 days in jail.

. . . .

. . . So, judge, . . . all of those terms and conditions she listed, that was in our first set of paperwork in an agreement that we thought was available to all defendants.

I was specifically informed by Ms. Nakakuni that that was not available to Mr. Mekkaoui and instead she said: "In the interest of justice and to facilitate a resolution, I reviewed the reports in the case and based on the facts in Mr. Mekkaoui's case and his history, we offer to amend the OVUII to a reckless. You must waive any procedural defects of the amendment and the complaint. You are free to request a deferral and we will make a record objection."

Those are the only terms, judge. The only sentence available for a reckless driving is a thousand dollar fine and 30 days in jail.

THE COURT: Is there a letter signed by Ms. Nakakuni --

. . . .

. . . memorializing the terms and conditions of your deal?

[DEFENSE COUNSEL]: I have it in writing, judge, via email.

[DPA]: And, your honor, if I may respond . . . I'm not comfortable taking this plea. I think [defense counsel], Ms. Nakakuni should perhaps go back to the drawing board and clarify the terms before entering this change of plea. There appears to be a breakdown in communication.

THE COURT: [Defense counsel], I . . . agree with the prosecutor . . . Ms. Nakakuni is not here today and nobody else has this writing that you have in their possession. It's not attached to your deferred acceptance of no contest plea or the change of plea document. So shall we continue this matter until you get the deal in writing to the prosecutor . . . representing the State in court, or how would you like to proceed? . . . .

. . . .

. . . There's a discrepancy on what the deal is so that means there's no deal.

4

> [DEFENSE COUNSEL]: We . . . object for Rule 48 purposes. If they want to bring Ms. Nakakuni in, I mean, I'm reading verbatim what her email says. I don't know how they can now renege on the deal.

The District Court continued the hearing to the end of the calendar, and the proceeding then reconvened with Nakakuni present. After defense counsel explained his January 28, 2022 email exchange with Nakakuni, the following discussion occurred:

> THE COURT: -- part of your statement, [defense counsel], discusses that you will argue sentencing. Does that not include the driver sanctions, the fines and fees, the --
>
> . . . .
>
> . . . crime victim compensation fee?
>
> . . . .
>
> Those are things that are automatic that are not part of the deal that was stated but it's certainly part of the court's realm to provide those fines and fees. It's part of a change of plea.
>
> [DEFENSE COUNSEL]: I don't think so for a reckless, judge. Under a DUI I would agree with you.
>
> THE COURT: What about crime victim compensation fund?
>
> [DEFENSE COUNSEL]: Well, the court costs, maybe. Okay. We're not bickering over court costs.
>
> . . . .
>
> I'm bickering --
>
> . . . .
>
> -- over a 14-hour class, the one year with an interlock regardless of what's happened at the ADLRO.

In response to defense counsel, Nakakuni explained:

> MS. NAKAKUNI: . . . . So, your Honor, on Thursday, January 27, what [defense counsel] did was to send to the general office email, HonPros District, his plea documents. So I got it probably couple of days later 'cause it didn't come directly to me. . . .
>
> . . . . And I reviewed the document. He had uploaded . . . the proper forms and he knows to do this because this is what is usually done in these deferrals. I reviewed the documents and they were fine. They . . . were in order.
>
> Now, . . . when I saw what he said, which is . . . Mr. Mekkaoui . . . accepts the State's offer for the plea deal communicated through the HACDL web site, . . . I took objection to that.
>
> We have had this issue before, [defense counsel] and I (indiscernible) our office previously last year when there

was a COVID deferral . . . I think it was last summer, [defense counsel] filed a motion to enforce plea agreement. And what he did was he again referred to whatever was uploaded on the HACDL web site, and I said that was not a plea agreement specific to you or anybody else.

And so actually this time around, judge, I took pains . . . explaining . . . .

And so of course I did inform this committee that we had a plan for trying to deal with some of the outfall from the Thompson case, that if we could, what we would like to do is make a similar type offer because we thought there might be defendants who would want to take care of their cases and resolve it now, rather than if the judge dismisses the case, wait for us to refile, we might not but most times we would refile, and then have to deal with it couple of months down the road. So it was with that intent that this was something that I told this committee.

And I took pains to tell them, because of the situation with [defense counsel] last year, I said, you know what, this is not a program. You know, we're not going to announce it and so I'm not sending any emails. Okay? But of course they wanted to know what the terms were and I'm sure they were writing it down. And I haven't seen the HACDL web site, which [defense counsel] referred to in the email he sent to our office's general email box, but the terms and conditions probably made their way there. . . .

So . . . when I get this email from [defense counsel], his paperwork was fine but I just needed to make him understand that anything that's uploaded on the HACDL web site as informational is not an offer to any specific client. So that's what I told him.

And so I did say that we'll make the offer, and of course what I intended, what I meant was we accept this paperwork. I did not reject the paperwork. This paperwork is in proper order.

. . . .

His paperwork . . . .

. . . .

On the 27th.

. . . .

. . . And which was attached to the email –

. . . .

-- that was sent to my office.

. . . .

THE COURT: Did you receive the paperwork on the 29th?

. . . .

MS. NAKAKUNI: . . . I never saw that one. I never saw the most recent one.

THE COURT: Please pass this to Ms. Nakakuni.

[DEFENSE COUNSEL]:  I have a copy for her, judge.

. . . .

MS. NAKAKUNI:  Judge . . . I'm reading it for the first time now in court and this is not what I saw.  And in my communications with [defense counsel], . . . I thought this was a collegial exchange.  After he filed this and after I told him . . . don't be doing that unless you . . .

. . . .

-- contact one of us.  I considered my email to him a contact.

. . . .

THE COURT:  So when you said "got it," you were of the impression --

. . . .

-- that this –

. . . .

-- DANCP with all of the conditions that were stated by the prosecutor was what the deal was?

MS. NAKAKUNI:  Yes, your honor.

. . . .

Because that was the email that I got and I read.

THE COURT:  All right.  Understood.  Thank you, Ms. Nakakuni. [Defense counsel], any rebuttal?

Defense counsel responded:

[T]he most probative communication that I got from Ms. Nakakuni is not when she said "got it, I accept the offer." It's before that . . . first of all, she does tell me, I mean, I misunderstood.  I didn't mean to try to pull a fast one.  I was just doing what I thought we were supposed to do to resolve this case quickly . . . that's what I did in COVID.  My clients qualified.  Here's the papers.

THE COURT:  And you did do that, right?

[DEFENSE COUNSEL]:  I did do that on the 27th.

Defense counsel then restated the offer made in Nakakuni's January 27, 2022 email.

After considering the matter, the District Court ruled:

[M]y ruling today is that there is no meeting of the minds here. . . .  If you're intent on arguing that Mr. Mekkaoui is going to walk with a reckless and that is all, and that's the extent of the deal, I don't believe that there is . . . an agreement here.

7

> Given the multiple documents that were filed and the timing of the documents such that on the 28th of January at 4:56 p.m. when Ms. Nakakuni says, 'got it, I agree' in her possession was the two documents that you filed on January the 27th. Both of them are change of pleas requesting a DANCP, amending to reckless and stating various provisions that were not only part of the COVID deal, but I think it's the intent of the prosecutor that's going to be the standards for the cases that they are now going to work on for the Thompson case. I'm not sure about that. I'm going to leave that to you folks. But if that's the information at the time of her knowledge when she responded, then that was her understanding of the agreement.
>
> If you have a different understanding of the agreement, then that means there's no agreement. And if there's no agreement, I'm not going to take a plea today.

The District Court then turned to the pending Motion to Dismiss based on the Thompson ruling. Following oral argument, the court granted the motion, ruling that "because there is no signed declaration supporting the complaint, the court is going to dismiss the complaint as defective." The court continued:

> However, in doing so the court does note that this is a fairly new case. Prosecutors had little time to prepare. Given the criminality as a petty misdemeanor . . . for an allegation of driving under the influence of an intoxicant, which is a safety issue for our community, and the technicality by which the case is being dismissed today, the matter's dismissed without prejudice.

The same day, *i.e.*, January 31, 2022, the District Court entered the Judgment, granting the motion to dismiss without prejudice.

On appeal, Mekkaoui contends that: (1) "[t]he State breached and/or the [District Court] should have accepted the plea"; and (2) "[t]he case should have been dismissed with prejudice and/or the decision to dismiss without prejudice was supported by insufficient and/or incorrect findings."

(1) In order to breach a plea agreement, or in order to enforce a plea agreement, there must be a valid plea agreement in the first instance. The existence of a plea agreement is a question of fact subject to review for clear error. Cf. United States v. Helmandollar, 852 F.2d 498, 501 (9th Cir. 1988) (applying analogous federal law: "What the parties agreed to in any given case is preeminently a question of fact, to be resolved by the district court. . . . Accordingly, we review the district court's findings as to the existence and terms of the alleged plea agreement for clear error." (citations omitted)). "A plea

agreement is essentially a contract" and is generally measured by contract principles.  See State v. Miller, 122 Hawaiʻi 92, 104, 223 P.3d 157, 169 (2010) (quoting State v. Adams, 76 Hawaiʻi 408, 412, 879 P.2d 513, 517 (1994)).

Here, the parties exchanged multiple emails and plea documents, but the record does not reflect an agreement between the parties on all of the essential terms of the potential plea, in particular, the terms regarding sentencing.  Cf. Balogh v. Balogh, 134 Hawaiʻi 29, 40 n.7, 332 P.3d 631, 642 n.7 (2014) ("[I]t is well settled that 'there must be a meeting of the minds on all essential elements or terms in order to create a binding contract.'" (quoting Moss v. Am. Int'l Adjustment Co., 86 Hawaiʻi 59, 63, 947 P.2d 371, 375 (1997))).  Hence, at the hearing on January 31, 2022, the parties disagreed as to the meaning of their emails and the terms of the alleged plea agreement.  Under these circumstances, the District Court found that "there [wa]s no meeting of the minds" between the parties and thus no plea agreement.  On this record, we cannot say that the District Court clearly erred in so ruling.[3/]

(2) Mekkaoui contends that the case, which was dismissed based on Thompson, should have been dismissed with prejudice.  He argues that, alternatively, the District Court did not make sufficient findings to dismiss the case without prejudice.

Initially, we note that the Hawaiʻi Supreme Court recently held in Mortensen-Young that HRS § 805-1 applies only to criminal complaints used to obtain a penal summons or arrest warrant.  152 Hawaiʻi at 393-95, 526 P.3d at 370-72.  In other

---

[3/]    Relying on State v. Abbott, 79 Hawaiʻi 317, 901 P.2d 1296 (App. 1995), Mekkaoui argues that he "had reasonable grounds for relying on his interpretation of the State's plea offer, particularly when strictly construed in . . . Mekkaoui's favor."  In Abbott, however, there was no dispute that the parties had entered into a plea agreement under which the defendant had entered a no-contest plea; rather, the issue was whether the State had breached the terms of the parties' agreement by seeking a sentence that was not part of it.  79 Hawaiʻi at 318-19, 901 P.2d at 1297-98.  In determining whether a breach had occurred, the court analyzed "whether the defendant ha[d] reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise."  Id. at 320, 901 P.2d at 1299.  Here, in contrast, the issue is whether there was a valid plea agreement in the first instance.  Abbott is thus inapposite.

cases, such as the OVUII prosecutions at issue in <u>Mortensen-Young</u>, Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 7 provides the proper framework to analyze the sufficiency of complaints. In <u>Mortensen-Young</u>, the supreme court held that the trial court improperly dismissed the complaints against the appellees, reasoning that the charging instruments had complied with HRPP Rule 7(d), and were thus sufficient to initiate prosecutions for OVUII.  <u>Id.</u> at 399, 526 P.3d at 376.

Here, as in <u>Mortensen-Young</u>, HRS § 805-1 is inapplicable because the Complaint was not used to obtain a penal summons or arrest warrant.  The Complaint set forth a plain and concise statement of the essential facts, was signed by the prosecutor, and referenced the statute that Mekkaoui allegedly violated, as required by HRPP Rule 7(d).  Therefore, the Complaint was sufficient to initiate the subject prosecution, and the District Court erred in dismissing the case based on <u>Thompson</u>.

Nevertheless, the State did not appeal from the Judgment, and Mekkaoui does not challenge the dismissal of the Complaint.  Rather, Mekkaoui argues only that the District Court erred in dismissing the Complaint without (as opposed to with) prejudice or in failing to make adequate findings to support its decision, based primarily on the rulings in <u>State v. Hern</u>, 133 Hawaiʻi 59, 323 P.3d 1241 (App. 2013), and <u>State v. Estencion</u>, 63 Haw. 264, 625 P.2d 1040 (1981).

<u>Hern</u> and <u>Estencion</u> require trial courts to consider various factors and to clearly articulate the reasons for dismissing a case with or without prejudice under HRPP Rule 48. <u>See</u> <u>Hern</u>, 133 Hawaiʻi at 63-64, 323 P.3d at 1245-46; <u>Estencion</u>, 63 Haw. at 268-69, 625 P.2d at 1043-44; <u>see also</u> <u>State v. Michaeledes</u>, 152 Hawaiʻi 217, 223, 524 P.3d 1241, 1247 (2023) (construing <u>Estencion</u>).  However, <u>Hern</u> and <u>Estencion</u> appear to be irrelevant here, because the District Court granted Mekkaoui's motion to dismiss under <u>Thompson</u>, not under HRPP Rule 48.  <u>Cf.</u> <u>Michaeledes</u>, 152 Hawaiʻi at 223, 524 P.3d at 1247 (ruling that <u>Estencion</u> and its progeny were irrelevant where the defendant moved to dismiss for lack of jurisdiction under HRPP Rule

12(b)(1), not under HRPP Rule 48). Mekkaoui cites no applicable authority for the proposition that trial courts must provide a basis for dismissing a complaint without prejudice when the dismissal is for non-compliance with HRS § 805-1. Even were Mekkaoui to point to such authority, a dismissal with prejudice plainly would not be appropriate here, where HRS § 805-1 was inapplicable and the Complaint was sufficient to initiate the OVUII prosecution. See supra; Michaeledes, 152 Hawaiʻi at 223, 524 P.3d at 1247. Put another way, since the sole basis for dismissal of the Complaint was erroneous, it would make no sense to preclude the State from returning to court and refiling the Complaint, if it so chose.

For these reasons, the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on January 31, 2022, in the District Court of the First Circuit, Honolulu Division, is affirmed.

DATED: Honolulu, Hawaiʻi, May 24, 2023.


On the briefs:                          /s/ Katherine G. Leonard
                                        Presiding Judge
Richard L. Holcomb
(Holcomb Law, LLLC)
for Defendant-Appellant.                /s/ Keith K. Hiraoka
                                        Associate Judge
Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,               /s/ Clyde J. Wadsworth
for Plaintiff-Appellee.                 Associate Judge

11